## Garber *v.* Great Atlantic & Pacific Tea Company, Appellant.

Argued September 28, 1959.    Before BELL, MUS-MANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*John David Rhodes,* with him *Pringle, Bredin & Martin,* for appellant.

*P. J. McArdle,* with him *James R. Fitzgerald,* for appellees.

OPINION BY MR. JUSTICE BOK, November 9, 1959:

Plaintiff, with her mother and children, was shopping in defendant's self-service store in Clairton, Allegheny County. She was standing by a display of cans of Wesson oil mounted on a shelf twelve inches from the floor. The cans, stacked three high atop one another, were each ten inches in height, making the stack about thirty inches high.

She was the only person near the display, her children and mother being at a little distance, and she was standing in the center of the aisle. While she was there a can, which held a gallon and weighed six pounds, fell on her foot. It fell about three feet because after the accident the cans in the display were seen to be symmetrically stacked, save for one empty space at the top of the end column at the place where the plaintiff had been standing. No one saw the can fall.

The can had a metal spout which pierced her foot and inflicted painful and permanent injury. The jury gave her $10,000 and her husband $2500, and the defendant has appealed, asking judgment n.o.v. or a new trial.

After the accident a store clerk came up and according to the plaintiff said that he had told the store manager that the cans were not stacked right and that

someone would get hurt. The trial judge struck out this testimony later, when it became apparent that the clerk had no authority to bind defendant. However, the manager testified for the plaintiffs that the cans didn't stack well because of the protruding spout and lack of leg. He added that they were usually stacked flat, not only because stacking them on top of each other would hide other merchandise displayed on the shelf behind them but because they would fall over and be dangerous: the clerks were not allowed to stack them so.

The manager was not in the store when the accident occurred, and the plaintiff testified that the cans were in fact stacked in the forbidden way.

We think that the case was properly left within the competence of the jury. The cans were so stacked that they were dangerous because their construction would make them likely to fall over, and Mrs. Garber was standing, doing nothing, when one of them did fall on her. Defendant's responsibility for such an occurrence is an entirely reasonable conclusion under *Smith v. Bell Telephone Co. of Pennsylvania*, 397 Pa. 134 (1959), 153 A. 2d 477, where we said: "It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. The judge cannot say as a matter of law which are facts and which are not unless they are admitted or the evidence is inherently incredible. . . . The facts are for the jury in a case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant."

The jury was therefore free to discard less useful hypotheses, such as a slight earthquake, the jarring of

a passing truck, a small boy with a slingshot, or a clumsy fellow customer. There is nothing inherently unreasonable or incredible about the defendant's negligent stacking. The proof of reasonable causation distinguishes this type of case from those cited by defendant, such as: *Wolk v. Pittsburgh Hotels Co.*, 284 Pa. 545 (1925), 131 A. 537, where a bottle fell from the window sill of a hotel; *Tallarico v. Autenreith*, 347 Pa. 170 (1943), 31 A. 2d 906, where a plank was thrown out of a window; *Fleccia v. Atkins*, 270 Pa. 573 (1921), 113 A. 842, where a brick fell from a building.

The case rather resembles those where agency or origin appears in such a way as to be circumstantially connected with the defendant. Illustrations are: *Vollum v. School Lane Apartments, Inc.*, 380 Pa. 252 (1955), 110 A. 2d 251, involving a leaning door; *Skeen v. Stanley Co. of America*, 362 Pa. 174 (1949), 66 A. 2d 774, where a cinema patron was struck by a falling bolt; *Giordano v. Clement Martin, Inc.*, 347 Pa. 61 (1943), 31 A. 2d 504, involving a falling stone; *Kapuscianski v. Philadelphia and Reading C. & I. Co.*, 289 Pa. 388 (1927), 137 A. 619, where an object seen in the air was traced to defendant; *Palmer v. Miller North Broad Storage Co.*, 105 Pa. Superior Ct. 21 (1932), 158 A. 21, where crates were insecurely stacked; *McGill v. Middleton Car Co.*, 70 Pa. Superior Ct. 114 (1918), where steel plates were improperly stacked; *Sidwell v. Gimbel Brothers, Inc.*, 52 Pa. Superior Ct. 286 (1913) where rolls of linoleum were stacked and there was no definite evidence of the immediate cause of one's falling and injuring the plaintiff.

In the *Giordano* case, supra (347 Pa. 61), we said: "The case is not one of presuming negligence from the happening of the accident, but of inferring negligence

from the circumstances from which it apparently arose (Pope v. Reading Co., 304 Pa. 326, 331, 156 A. 106, 108). Plaintiff relies upon the *positive evidence* produced by him to establish the cause of the accident. Conrad testified that when he looked up, at the moment of the occurrence, the end of the plank held by the colored man was *right in the open space where the stone had been before it fell,* and, while no one actually saw the plank touch the stone, the conclusion is not only possible, if that testimony is true, but almost irresistible, that the fall of the stone was caused by the plank coming in contact with it. All other human agencies were excluded as causative factors because, according to Conrad, *there was no other person around there besides the negro.* The possibility that the stone may have fallen of itself was reasonably dispelled, as a jury might find, by testimony that there was no vibration of the building and that the stone had been set in 1/16 to 1/4 of an inch of mortar which had been hardening since the previous day." (Original emphasis)

Defendant is not entitled to judgment n.o.v. It alternatively asks a new trial because the verdict was excessive. The plaintiff's foot was permanently injured and she has limitation of motion which will increase with age. She had 252 physiotherapy treatments and will have to spend $200 per year for future medical care. She is thirty-three years old and has a life expectancy of forty-two years. The doctor's bill was $1365 for four years' attention. She lost $345 in wages.

Under these circumstances the verdicts were anything but excessive.

The remaining points have no merit. They involve the basic discretion of the trial judge, which we think was exercised fairly and justly.

Judgments affirmed.