## Marrazzo, Appellant, *v.* Scranton Nehi Bottling Company.

Argued April 27, 1966. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Paul A. Barrett,* with him *Russell J. O'Malley, Robert P. Casey,* and *Nogi, O'Malley & Harris,* for appellants.

*Harry P. O'Neill, Jr.,* with him *Ralph P. Needle,* and *Walsh & O'Neill,* for appellee.

OPINION BY MR. JUSTICE JONES, September 27, 1966:
On November 22, 1956, Michael Marrazzo and Rose Marrazzo, his wife, owned a building located at 402

Race Street, Scranton, wherein John Marrazzo, their son, conducted a business known as Quality Cleaners, a business which involved the cleaning, repairing and dyeing of clothing and the retail sale of men's clothing. Early in the evening of November 22, 1956, a fire occurred which resulted in the total destruction of Marrazzos' building and most of its contents.

For some years there had been a coin-operated electrically cooled vending machine for the sale of bottled soft drinks located in the rear of the building. This machine was owned and serviced by Scranton Nehi Bottling Company, Inc. (Nehi); its location in the building had been selected by Marrazzos; between Nehi and Marrazzos there was no written agreement, Nehi receiving a profit by adding to its charge for cases of soft drinks an additional amount for the use of the machine; Nehi kept the machine in repair.

Marrazzos instituted a trespass action in the Court of Common Pleas of Lackawanna County against Nehi to recover the damages caused by the fire to their building and its contents. It was Marrazzos' theory that it was Nehi's duty to keep the vending machine in proper operating condition, that Nehi had failed in the performance of that duty and that, by reason of the breach of that duty, the machine caught fire and, in turn, set fire to the building. Nehi's defense was two-fold: (1) that Nehi had assumed no duty to service and maintain the machine but that such service and maintenance was Marrazzos' responsibility and (2) that the negligence, if any, of Nehi was not the cause of the fire but that the fire occurred because of the actions, either by mischief or design, on the part of an outside agent.

The parties stipulated that the case should be tried *on the issue of liability* before President Judge HOBAN without a jury and that, if Nehi should be found li-

able, *the issue as to damages* should be tried in a subsequent proceeding.

After a trial at which considerable testimony was introduced, President Judge HOBAN concluded: (a) that "Nehi was chargeable with the duty of keeping the machine in proper operating condition and for that purpose to make such inspections and take such measures as might be necessary to that end"; (b) "that a fire originated in the relay box attached to the compressor unit [of the vending machine] and communicated through the lead-in wire which was rubber covered and oil covered to other parts of the building—hence, a cause of the conflagration";[1] (c) that the cause of the faulty operation of the vending machine was Nehi's negligence in failing to provide adequate inspection and repair service; (d) that Nehi was liable for the damages caused by the fire.

Exceptions were filed and argued before a three-judge court—President Judge HOBAN, Judges ROBINSON and CONABOY. That court, in an opinion written by President Judge HOBAN, reversed the decision of the trial judge and directed the entry of a judgment for Nehi from which judgment this appeal was taken.

-----

[1] The trial court reached this conclusion from the testimony of two of Marrazzos' witnesses, Dr. Mary Willard, Professor of Chemistry and Professor A. H. Forbes, Professor Emeritus of Electrical Engineering, both of Pennsylvania State University. Their conclusion was: "Faulty maintenance of the compressor unit, resulted in vibration and loss of efficiency, which combined with an electric overload caused fusing of the loose connection, intense heat and a communication of the fire to the insulation of the lead-in wiring and thence to the structure itself." In commenting on their conclusions, President Judge HOBAN stated: ". . . these conclusions are not mere expert opinions, subject to the usual skeptical acceptance of opinion evidence, but are scientifically backed conclusions based on scientifically determined physical facts. Both experts definitely stated that the condition of the relay box as found by them could not have been caused by an external fire."

As we read the opinion of the court en banc the conclusion of the trial judge that Nehi was under a legal duty to service and maintain this vending machine very properly was not disturbed.[2]  As stated in that opinion: ". . . the trial Judge's conclusions depend entirely upon physical evidence as examined and analyzed by [Dr. Willard and Professor Forbes], . . . the scientific deductions which they made and their ultimate opinion. All the physical evidence has been available to and has been examined [by the court en banc] and the scientific evidence has been reduced to cold type.  The question before us is whether or not the physical evidence, scientific analysis and scientific deductions therefrom support the ultimate opinion of [Marrazzos'] experts— as against the opinion of [Nehi's] expert[3] who claimed that the damage to the [vending machine] was caused by external fire, not caused by faulty operation of the machine.  So far as this critical point is involved, credibility is not an issue."

The majority of the court en banc[4] were of the opinion: (1) that the evidence did not clearly indicate "which of the wires into the relay box failed to receive the overload and therefore fused at the end causing a short circuit within the box, arcing and accelerating high temperatures, and fire communicated to the outside"; (2) that, assuming that "the entry wires into the relay box did fuse at the end as a result of abnormally high temperatures", the opinion of Dr. Willard that "the fire communicated itself from the relay box through the lead wire to the structure of the build-

---

[2] Our examination of the record reveals that this conclusion is buttressed in every respect by the evidence.

[3] John Mooney, Chief of the Materials Division of the U. S. Testing Company of Hoboken, N. J.

[4] From a study of the court en banc's opinion it would appear that President Judge HOBAN agreed only with the *second* conclusion of the court en banc.

ing, eight or more feet away" was "postulated" and, therefore, speculative.[5]

On this appeal, while we determine whether the evidence, quantitatively and qualitatively, was such as to justify the fact-finding tribunal (in this case, the trial judge), in finding liability, specifically we must examine this record to determine whether there was a preponderance of evidence to establish, *first,* whether the fire originated in the vending machine and, *second,* if it did, whether such fire was communicated from the vending machine through the lead wire to the building itself.

Summarized, Marrazzos' testimony indicates: (a) that P. W. Griggs, a passerby, and J. P. Morgan, a nearby resident—both of whom were the first to observe the fire—testified that the fire was coming from the rear (i.e., in the area of the location of the vending machine) to the front of the building; (b) Marrazzos' two experts, upon a visual post-fire examination of the vending machine, found in the relay box loose connections one of which had become separated and that a "bubble", indicating intense heat, appeared on the ends of the wire; that, although the compressor should have been sealed, oil from the compressor was found in the relay box while the compressor itself had little oil in it, a fact which indicated improper operation of the machine; that the fuse—thirty amperes— was insufficient to prevent an overload in the machine;

[5] Dr. Willard stated that she "postulated" this opinion which term the court en banc equated with a "guess". "To postulate" is "to take for granted; esp. to assume as a basis of reasoning, discussion or action" or "to assume the possibility of (some construction or operation)": The Oxford English Dictionary (1933), Vol. VII, p. 1178. "A proposition which is taken for granted or put forth as axiomatic": Webster's New International Dictionary (2d Ed. 1956), Vol. III, pp. 1930-1931. Cf. *Tillie v. Glens Falls Insurance Co.,* 208 F. Supp. 921, 923 (1962).

524

(c) Dr. Willard stated that the relay wires—upon which she found lint and oil—were burned, the relay was in poor condition, that the bimetal strip—which would cause the makes and breaks in the relay—was either missing or in such poor condition as to be unusable; that, in her opinion, from the physical evidence observed by her in an examination of the machine, and its parts, an arcing had taken place between the end of the disconnected wire which had "bubbled" and the stud to which it should have been joined, that the temperature of the arcing was increased because the compressor was "oil-low" with the result that the oil and lint covered wires were ignited; that the "fusing" of the wires which she observed could not have been caused by an external fire; that she knew *definitely*— from her examination of, and the scientific tests made on, the various parts of the machine—that the fire originated in the machine; (d) John Marrazzo testified that the only asphalt tile on the entire floor which was burned away from the floor was the tile located under the machine; (e) Dr. Willard "postulated" that the fire which originated in the machine followed the oil and lint covered rubber wire along the floor to the rear of the machine to the wooden partition against which the machine was placed.[6]

Nehi produced an expert named John Mooney, "an expert examiner of similar electric devices and as a frequent investigator of fires supposed to be of electrical origin", who made a series of tests on the machine. He concluded, and so testified, that the damage to the machine came from fire *without* and not *within* the machine and that, while the origin of the fire could

---

[6] There was evidence that the machine was standing in the rear of the building "right up against" a wooden partition wall on one side and a wooden work bench on the other. Both the wall and bench were burned by the fire.

not be determined, the damage to the machine was the result of fire exposure and not the cause.

Interestingly, some months subsequent to the fire, a 17 year old boy, with other youths, was apprehended for various crimes and, at the time of his apprehension and later in the Juvenile Court, he stated that, with two other youths, he had been in Marrazzos' building on November 22, 1956, that they lit matches to look around and then saw a fire in the place which caused them to run away. Later at Camp Hill Correctional Institution, this boy denied being in Marrazzos' building at any time and, at trial, when called as a hostile witness by Nehi, he reiterated this denial. President Judge HOBAN, impressed by the youth's apparent sincerity at the trial, concluded that his earlier statements were not credible.[7]

Have Marrazzos sustained their burden of proving that Nehi was negligent and that its negligence caused this fire? We believe that they have produced sufficient evidence upon which Nehi's liability can be predicated.

It is hornbook law that the fact-finder, whether it be a jury or the court, may not be permitted to reach its verdict or decision merely on the basis of guess or conjecture but that there must be evidence, direct or circumstantial, upon which logically its conclusion may be based: *Smith v. Bell Telephone Co. of Penna.*, 397 Pa. 134, 138, 153 A. 2d 477 (1959), and authorities therein cited. See also: *Cuthbert v. Philadelphia*, 417 Pa. 610, 615-616, 209 A. 2d 261 (1965). Such a rule ". . . means only that the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be reached": *Smith v.*

---

[7] Original opinion of HOBAN, P. J.

*Bell Telephone Co. of Penna.,* supra, p. 138. "The facts are for the jury [the fact finding tribunal] in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant": *Smith v. Bell, Telephone Co.,* supra, pp. 138-139. Moreover, as Mr. Justice EAGEN stated in *Cuthbert v. Philadelphia,* supra, at pp. 614-615: ". . . it is not necessary that plaintiff prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities, [citing an authority], but he must eliminate those other causes, if any, as were fairly suggested by the evidence: [citing authorities]."

Reviewing this record we are convinced that there was evidence sufficient in nature to have enabled the fact-finding judge, without resort to any guess or conjecture, to have reasonably concluded that the fire did originate in the vending machine. The testimony of the experts who saw and made post-fire examinations of the machine and its various parts and made scientific tests thereof, the physical evidence presented by the machine and its parts, the condition of the floor upon which the machine was posed and the testimony of those who first observed the fire in that area of the building where the machine was located all furnish a sound basis for concluding the fire started in the machine. Nehi sought to show that the fire originated outside the machine and, in support of its position, produced the testimony of an expert whose opinion was that the fire, whose origin he could not determine, did not originate in the machine, and, impliedly at least, Nehi suggested that the cause of the fire was due to the actions of the three youths, supposedly in Marrazzos' building at the onset of the fire. Assuming that the trial judge had found the initial statements of the 17 year old youth credible—which the judge em-

phatically stated he did not—such statements merely placed the three youths in the building at the time the fire began but did not involve them in causing the fire.

That there *might have been* another possible cause of the fire does not prevent the submission of Marrazzos' evidence to the jury. As the Superior Court stated in *Costanzo v. Jim Belcher Buick,* 189 Pa. Superior Ct. 136, 139-140, 149 A. 2d 147 (1959) : "The jury was entitled to hear the testimony of this expert whose experience and knowledge in the causes of fires was far superior to that of ordinary laymen. This testimony was not a guess or conjecture but was deducible as a reasonable inference from the facts and conditions proved. [citing an authority]. Where the evidence points to a certain cause which would make defendant liable, *plaintiff will not be denied redress merely because there may be some other possible cause for the accident.* In such case the question is for the jury. [citing an authority]. Where there is doubt as to the inference to be drawn from the evidence, the question of negligence is properly for the jury. [citing authorities]. Such evidence of negligence may be shown by circumstantial or direct evidence. [citing an authority]." (Emphasis added). See also: *Mars v. P.R.T. Co.,* 303 Pa. 80, 83, 90, 154 A. 290 (1931).

There was clear and convincing evidence that Nehi, in breach of an undertaken duty to maintain and service this machine, failed to perform that duty. As President Judge HOBAN well stated in his original opinion: "A Nehi machine was installed in [Marrazzos'] plant in 1954. This machine developed a fire in the lower compartment and was repaired by Nehi's serviceman. On complaint of a similar occurrence the entire machine was removed and replaced in 1955 or early 1956. This new machine was placed in the location selected by Marrazzo but installed by Nehi's serviceman, who connected it to an outlet line protected by a 30

ampere fuse. Over doubts of the plant electrician the serviceman for Nehi approved the 30 ampere fuse as sufficient to prevent overload.

"During 1956, Marrazzo made frequent complaints as to the failure to cool properly and as to noise in operation. During 1956 at least three or more visits were made by the Nehi serviceman to check complaints on each of which the compressor unit was checked. The testimony differs as to whether the complaints involved only operation of the coin mechanism or of the compressor assembly but it is conceded that the unit was inspected on each service visit.

"Dissatisfaction with operation continued to August or September 1956 when the compressor unit was removed by the Nehi serviceman and later returned. On return the unit was inserted without a protecting dust screen over the condenser. I accept this version over denial by [Nehi's] serviceman that the unit was removed for shop inspection because of the later discovery by Dr. Mary Willard that lint was found on the compressor unit, which would seem to be less probable if the screen grill had been replaced."

The conclusion reached by the trial judge is well buttressed by the evidence. The evidence not only supports a finding that the fire originated in the machine but that it arose because of Nehi's neglect of its assumed duty to keep this machine in proper order.

Lastly, we must determine from the evidence of record whether Marrazzos have produced sufficient evidence to reasonably satisfy the fact-finder that the fire, originating in the vending machine, spread from that point along the cable to the building itself. A *possibility* of such causation of the fire which destroyed the building is not sufficient to impose liability on Nehi. However, the sufficiency of the evidence is not subject to mechanical measurement but must be determined solely from the established facts and reasonable

inferences from such facts. In *Propert v. Flanagan,* 277 Pa. 145, 146, 120 A. 783 (1923), we said: "The law does not require proof by direct evidence that a fire was caused in a particular way. . . . This may be shown by circumstantial as well as direct evidence . . . ." Proof to a degree of absolute certainty is rare in any litigated factual controversy and the law sensibly requires only that the evidence as to the operative cause of the injury be such as to satisfy reasonable and well-balanced minds that it was the one upon which the plaintiff relied: *Liguori v. Philadelphia,* 351 Pa. 494, 498, 41 A. 2d 563 (1945); *Pinkshaw v. Cambria Township,* 170 Pa. Superior Ct. 213, 218, 85 A. 2d 693 (1952). In *Trexler v. Baltimore & Ohio R. R. Co.,* 28 Pa. Superior Ct. 198, 203 (1905), it was stated: "It is true, the fact that the fire originated in the way claimed by the plaintiffs was not established by direct or positive testimony. But the law did not require the plaintiffs to furnish that kind of proof in order to make out a prima facie case, nor was that high quality of circumstantial evidence required which would preclude the possibility of any other inference being drawn from the circumstances proved." In *Ten Ten Chestnut Street Corp. v. Quaker State Coca-Cola Bottling Co.,* 186 Pa. Superior Ct. 585, 142 A. 2d 306 (1958), the Superior Court determined a trespass action brought to recover for damages to a building caused by a fire allegedly resulting from a defective part in a vending machine owned and maintained by the defendant on the plaintiff's premises. In that case the plaintiff relied upon the testimony of an expert whose testimony was very similar to that of Dr. Willard in the case at bar. The Court, in upholding a verdict for the plaintiff, stated (pp. 593-594) : ". . . It was for the jury to determine whether or not the defendant had exercised reasonable care in the maintenance and operation of the vending machine. This is particularly so when there was no evi-

dence produced by either side to the effect that the fire could have been caused by defective electrical connections occurring outside of the machine. Defendant, however, contends that the jury was permitted to pass on negligence based only upon the conjecture of the experts as to the origin and cause of the fire. But as stated by the court below and in which we concur, this was not conjecture but sound scientific reasoning in attempting to establish the origin and cause. See Brueckner v. City of Pittsburgh, 368 Pa. 554, 84 A. 2d 197."

The court below equating the word "postulate", employed by Dr. Willard in describing the causal connection between the vending machine fire and the building destruction, with "speculate" or "guess" fell into error as a review of the record discloses. What Dr. Willard testified as to the causal connection was an inference from facts which had an evidentiary basis and not an inference from facts assumed and not in evidence. In *Kerr or Lendrum (Pauper) v. Ayr Steam Shipping Co. Ltd.* (1915), A. C. 217, 233, Lord Shaw said: "The distinction [between an inference and a conjecture] is as broad as philosophy itself. It is that an inference rests upon premises of fact and a conjecture does not." An opinion of an expert based upon an adequate factual foundation is neither speculative nor conjectural, but a legitimate inference and as such has evidentiary value in determining disputed questions of fact. "It is the intrinsic quality of the conclusion that matters, and not the label or characterization. Words mean what they manifest. Their meaning may vary. As Mr. Justice HOLMES said in Towne v. Eisner, 245 U.S. 418, 425, 38 S. Ct. 158, 159, 62 L. Ed. 372, 376, L.R.A. 1918D 254, 258: 'A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.' The

word 'speculative' has a varied meaning. Sometimes it is used as meaning a conclusion reached by the faculty or process of intellectual examination, search, and reasoning; sometimes as meaning conjecture, guesswork, and surmise. See, Webster's New International Dictionary, (2d ed.) 1935": *Hiber v. City of St. Paul,* 219 Minn. 87, 92, 93, 16 N.W. 2d 878, 881 (1944).

In our view, the employment by Dr. Willard of the word "postulate" did not render her testimony a guess or "conjecture". A reading of her entire testimony, both on direct and cross-examination, reveals clearly that her "postulation" was not conjectural or speculative in nature but based upon sound reasoning from the scientifically established and observed facts of record. Dr. Willard's testimony that the fire, which originated in the vending machine, was communicated therefrom to the nearby wooden portion of the building is based upon fact and not on fancy.

In view of the conclusion reached we need not consider Marrazzos' other contentions.

The judgment entered in favor of Nehi and against Marrazzos is reversed and the matter remanded to the court below for a determination, in accordance with the stipulation of the parties, of the issue of damages.