Noel *v.* Puckett (et al., Appellant).

Argued March 15, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert M. Carson,* for appellants.

*Myron W. Lamproplos,* with him *Cassidy & Lam-proplos,* for appellee.

OPINION BY MR. JUSTICE JONES, November 14, 1967:

This appeal lies from a judgment entered, after a nonjury trial, upon a verdict in favor of Ronald W. Noel [Noel], and against Kenneth E. Puckett [Puckett], Kenneth Gnau [Gnau], and W. M. Tynan & Co., Inc. [Tynan], in a trespass action arising out of a motor vehicle accident.

Noel, a U. S. Marine, on December 20, 1958, was hitchhiking from Youngstown, Ohio, to his base at Quantico, Virginia. At the first exit on the Ohio Turnpike, he hitchhiked a ride on a tractor operated by Puckett, owned by Gnau and leased at the time to Tynan. At the time of the accident, Puckett was upon business of both Gnau and Tynan.[1]

---

[1] Gnau and Tynan filed an answer, containing new matter, to Puckett's complaint in trespass wherein they averred, in substance,

Noel, riding in the right front seat of the tractor, fell asleep at a point near the Irwin interchange on the Pennsylvania Turnpike while the tractor was proceeding in an easterly direction in the eastbound lanes of the Turnpike. The next thing which Noel remembered was that he was lying, partly on and partly off, the easterly edge of the concrete portion of the Turnpike. The accident occurred at approximately 10:30 p.m., at a point west of a service plaza located a "mile or two" west of the New Stanton interchange on the Turnpike. As a result of the accident, Noel sustained serious injuries.

Noel instituted a trespass action in the Court of Common Pleas of Westmoreland County against Puckett, Gnau and Tynan. After a nonjury trial before Judge SCULCO, a verdict for $14,500 was rendered in favor of Noel and against all three defendants. At the conclusion of Noel's case, counsel for Gnau and Tynan[2] moved for a compulsory nonsuit upon the ground that no actionable negligence had been shown. Upon refusal of a compulsory nonsuit, no evidence was presented on behalf of Puckett, Gnau or Tynan. After rendition of the verdict, Gnau and Tynan moved for a new trial[3] and, upon refusal of a new trial, judgment was entered upon the verdict.

While the issues raised on this appeal are enumerated as five actually only two basic questions are presented: (1) was there sufficient evidence of negligence to sustain the verdict? (2) did the court be-

---

that in permitting Noel to ride in the tractor as a passenger, Puckett violated his instructions and exceeded his authority. Upon preliminary objections filed by Puckett, the court below struck off the answer and new matter on the ground that they had been filed untimely.

[2] Puckett was neither personally present nor represented by counsel at the trial.

[3] No motion was made for judgment n.o.v.

low err in refusing the motion of Gnau and Tynan for a continuance of the trial?

In passing upon the propriety of the refusal of a new trial, our inquiry is whether the court below abused its discretion or committed an error of law which controlled the outcome of the case: *Zeman v. Canonsburg Borough,* 423 Pa. 450, 454, 223 A. 2d 728, 730 (1966); *Gaita v. Pamula,* 385 Pa. 171, 175, 122 A. 2d 63 (1956); *Londrino v. Equitable Life Assurance Society,* 377 Pa. 543, 544, 545, 105 A. 2d 333 (1954); *Wargo v. Pittsburgh Railways Co.,* 376 Pa. 168, 175, 101 A. 2d 638 (1954). Unlike the appellate review of a refusal to take off a compulsory nonsuit where the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict-winner, ordinarily in reviewing the refusal to grant a new trial we view all the evidence: *Sherman v. Manufacturers Light & Heat Co.,* 389 Pa. 61, 68 (footnote), 132 A. 2d 255 (1957). In the case at bar, however, since the *only* evidence of record is that of the judgment-winner we necessarily view such evidence in its most favorable light.

In addition to his own testimony on the subject of liability, Noel produced one witness, W. K. Thompson. From the time Noel fell asleep some miles west of the situs of the accident until after the accident he had no recollection of what had happened. Thompson, an experienced Greyhound bus driver en route at the time in his own private motor vehicle from Cleveland, Ohio to Mount Pleasant, Pennsylvania, was proceeding in an easterly direction on the Turnpike. According to him, the highway was "clear and dry" and "visibility was very good."[4] He arrived at the scene of the accident very shortly after it occurred. When he arrived he saw the tractor lying upside down with its "wheels

---

[4] Noel had testified that "it was cold and rainy".

still in motion", the tractor driver (Puckett) crawling out of the broken windshield and the other occupant of the tractor (Noel) lying to the right of the tractor. On the berm of the Turnpike was a parked tractor-trailer, facing in an easterly direction, the rear of which "seemed to be damaged" but whose "upper marker lights were still lit". "Twenty to thirty feet" east of the tractor-trailer was the upset tractor "facing west" and, between the two vehicles, lying on the ground was Noel. Thompson did not see the accident, knew "nothing except what [he] recounted" in court and, at the scene of accident, had talked only to Noel.

Noel's theory of the accident is that the tractor had collided with the rear of the parked tractor-trailer. Noel avers Puckett was negligent in the following respects: (1) excessive speed in operation of the tractor; (2) failure to keep brakes, headlights and other mechanisms of the tractor in proper working order; (3) failure to keep a proper lookout ahead; (4) violation of state statutes and Westmoreland County ordinances pertaining to safe operation of motor vehicles; (5) violation of Interstate Commerce Commission regulations as to the number of hours an interstate motor vehicle operator is permitted to drive consecutively; (6) collision with the rear end of a parked motor vehicle. In addition to claiming they were vicariously liable for Puckett's actions, Gnau and Tynan were charged with negligence in: (1) failing to enforce the Interstate Commerce Commission's regulations, supra; (2) failing to hire a competent driver; (3) failing to relieve Puckett when they knew or should have known that he was fatigued and unable to operate the tractor.[5]

---

[5] The only evidence in connection with this charge was that of Noel. In answer to Noel's inquiry, while riding in the tractor, Puckett said "he had been on the road for two or three days", that he was enroute to Carlisle, Pa., that he was trying to get home to

Noel had the burden of showing, by a preponderance of the evidence, *how* the accident happened and that the proximate cause of the accident was Puckett's negligence.[6]

In *Sajatovich v. Traction Bus Co.*, 314 Pa. 569, 574, 172 A. 148 (1934), this Court said: "There must be some evidence to indicate *how* the accident occurred. . . ." See also: *Hulmes v. Keel*, 335 Pa. 117, 119, 6 A. 2d 64 (1939); *Lithgow v. Lithgow*, 334 Pa. 262, 265, 5 A. 2d 573 (1939); *Brooks v. Morgan*, 331 Pa. 235, 239, 200 A. 81 (1938); *Niziolek v. Wilkes-Barre Ry. Corp.*, 322 Pa. 29, 32, 185 A. 581 (1936). It was Noel's burden to produce evidence which "describe[d], picture[d], or visualize[d] what actually happened sufficiently to enable the fact-finding tribunal . . . to conclude that the defendant was guilty of negligence and that his negligence was the proximate cause of the accident:" *Lear v. Shirk's Motor Express Corporation*, 397 Pa. 144, 149, 152 A. 2d 883 (1959); *Lescznski v. Pittsburgh Rwys. Co.*, 409 Pa. 102, 106, 185 A. 2d 538 (1962).

*How* did this accident occur? While it is obvious that an accident occurred, it is the *manner* of happening of this accident that is difficult to ascertain from this record. Noel claims that the tractor driven by Puckett collided with the rear end of the tractor-trailer then parked off the highway and on the berm. The sole evidence of record is Thompson's testimony that

---

Kentucky before Christmas which was five days away and "he was to go to Carlisle and go back and go home." There is not a scintilla of evidence that Puckett was fatigued, that he had not had adequate and proper periods of rest or that any Interstate Commerce Commission regulation had been violated.

[6] The "reasonable inference" rule enunciated in *Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A. 2d 477 (1959) involved only the sufficiency of circumstantial evidence necessary to establish negligence as the cause of the accident. See, *Smith*, supra, at p. 139.

the *front* of the tractor was damaged[7] and that the rear end of the tractor-trailer "seemed" to be damaged.[8] The record establishes that the tractor collided with *something* and that, as a result of such collision, it was overturned. However, it does not follow, except by conjecture and speculation, that the tractor collided with the tractor-trailer. Noel made no attempt to show the presence or absence of any other vehicular traffic at the time on this heavily trafficked highway nor to describe, through Thompson, the location and the extent of the damaged areas on the two vehicles thus, possibly, furnishing a link between the damage to the tractor and the damage to the tractor-trailer. Strangely enough, the record is completely silent as to the presence of a driver or other occupant of the tractor-trailer and it must be noted that the upset tractor was twenty to thirty feet *beyond* the location of the tractor-trailer. Moreover, the record does not tell us whether the upset tractor was on or off the highway. All that this record reveals is that there was some undescribed damage to the front of the tractor and to the rear of the tractor-trailer and, from such evidence, Noel asks the fact finder to conclude that the tractor, proceeding in an easterly direction, left the travelled portion of the highway, for some unexplained reason, and struck a parked tractor-trailer located on the berm of the highway. Such evidence does not meet even the most minimal standard of proof required by our case law to show *how* this accident occurred. Unlike *Cuthbert v. Philadelphia,* 417 Pa. 610, 614, 615, 209 A. 2d 261 (1965) and *Marrazzo v. Scranton Nehi Bottling Co.,* 422 Pa. 518, 223 A. 2d 17 (1966), the case at bar presents a situation not of

---

[7] The extent and the location of damage on the front of the tractor is not shown.

[8] The extent and location of the damage to the rear of the tractor-trailer is not shown.

eliminating other causes of an accident fairly suggested by the evidence but of showing with testimony rather than by guesswork that the two vehicles did have a collision. The essential difficulty with Noel's case is we have not "circumstantial evidence" but only "circumstantial supposition" as to the manner in which the accident occurred. See: *Johnston v. Dick,* 401 Pa. 637, 643, 165 A. 2d 634 (1960). For this reason, a new trial must be granted.

Although the mere happening of an accident does not prove that one of the parties was negligent, negligence may be inferred from the circumstances surrounding the accident: *Bills v. Zitterbart,* 363 Pa. 207, 209, 210, 69 A. 2d 78 (1949); *Novak v. Neff,* 399 Pa. 193, 159 A. 2d 707 (1960); *Cuthbert v. Philadelphia,* supra. In the case at bar, *if* Noel can prove by evidence, direct or circumstantial, that the tractor did collide with the rear end of the tractor-trailer combination while the latter was parked on the berm and off the highway, then clearly Noel will have presented a case where there is "a reasonable inference" of negligent conduct on the part of Puckett, the driver of the tractor.

In view of our conclusion that the court below abused its discretion in refusing a new trial, we need not consider whether the court below erred in refusing a continuance of the trial.

However, since this case must be retried and with a view to avoid further litigation, if possible, after such retrial, we will comment on a problem which will certainly be posed for the court upon such retrial, that is, Noel's status insofar as Gnau and Tynan are concerned. If Noel was invited to ride in the tractor by Puckett and if Puckett was then and there acting within the scope of his authority, express or implied, Gnau and Tynan would be liable to Noel if Puckett was guilty of negligent conduct in the operation of

the tractor. On the other hand, if Puckett did not have authority, either express or implied, to permit Noel to ride on the tractor, then Gnau and Tynan would be liable to Noel, then occupying a trespasser status, only for wanton misconduct. See: *Borzik v. Miller,* 399 Pa. 293, 159 A. 2d 741 (1960); *Muroski v. Hnath,* 392 Pa. 233, 139 A. 2d 902 (1958); *Jaeger v. Sidewater,* 366 Pa. 481, 77 A. 2d 434 (1951); *Slother v. Jaffe,* 356 Pa. 238, 242, 243, 244, 51 A. 2d 747 (1947); *Reis v. Mosebach,* 337 Pa. 412, 12 A. 2d 37 (1940). Cf. "The Law of Torts", Harper and James, Vol. 2, §26.8, pp. 1387-1389.

In his complaint, Noel avers that Puckett was operating the tractor, that the tractor was owned by Gnau and leased by Tynan and that Puckett "was at the time an agent, servant or employee of [Gnau] or [Gnau and Tynan] and under the direct control of one or both". (Paragraph Fifth). By reason of their failure to file a timely responsive pleading, under Pa. R.C.P. 1045(a), they admitted these *averments.* However, the complaint does not *aver* that Puckett had authority, express or implied, from Gnau and/or Tynan to permit a passenger, such as Noel, to ride in the tractor and the failure of Gnau and Tynan to file a responsive pleading did not constitute an admission that Puckett had such authority. The court below in passing upon several objections during the trial indicated that it believed otherwise. In *Lopez v. Gukenback,* 391 Pa. 359, 362, 363, 137 A. 2d 771 (1958), this Court, commenting upon Rule 1045(a), said: "The clear import of the rule is that before *any* responsive pleading is required there must be an *averment.* Failure to file a responsive pleading does not constitute an admission of an unvoiced charge; a response or answer presupposes a charge or accusation made. Absent an *averment* of any fact delineated by the rule as requiring a responsive pleading, a failure to re-

spond does not amount to an admission." (pp. 362, 363, footnote p. 363).

On the retrial it will be Noel's burden to show that Puckett had authority, express or implied, to invite Noel to be a passenger on the tractor (*Slother v. Jaffe*, supra, pp. 243, 244) and upon Noel's ability to produce such proof will depend whether Gnau and Tynan are to be held liable only for wanton misconduct or for ordinary negligence. "The test is not that, when the invitation was given, he was engaged in the course of his employment in his master's business, but was the invitation or its consequences in furtherance of the master's business, so that it might be said to be impliedly within his authority? . . .": *Reis v. Mosebach*, supra, p. 414.

Judgment reversed and new trial granted.

Mr. Justice COHEN concurs in the result.

---

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE EAGEN:

I cannot agree with the conclusion of the Majority that the trial evidence is insufficient to sustain the finding of negligence on the part of Puckett. I do agree, however, that the record is insufficient to establish that Puckett had authority to permit guests to ride in the tractor. The ruling of the lower court on this point was incorrect.

I concur, therefore, in the Order granting a new trial.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Unlike the majority, I believe that it was reasonable for the trier of fact to conclude that the accident occurred because defendant's tractor struck the rear of the tractor-trailer rig parked on the side of the highway. Under the circumstances, it seems to me that the damage to the front of the tractor and the rear

of the rig without question reasonably permits such an inference. The fact that better circumstantial evidence could have been obtained by comparing "the location and extent of damage on the two vehicles" does not alter this observation. Nor does the "strange silence" of the record as to the presence of an occupant of the parked rig.[1] Indeed I believe careful analysis shows that the majority's determination that the trier of fact resorted to conjecture rather than reasonable inference is merely the majority's dissatisfaction with the quality of evidence produced in light of what *appeared* to be available. Such a defect, I submit, is not a valid basis for holding as a matter of law that plaintiff failed to make out a case.

Pinpointing "the essential difficulty" with appellee's case as a reliance on "circumstantial supposition" rather than "circumstantial evidence," the majority cites as support *Johnston v. Dick*, 401 Pa. 637, 165 A. 2d 634 (1960). This citation falls woefully short of supporting its conclusion. In *Johnston*, plaintiff was injured when a mixture of kerosene and gasoline exploded as he was filling a highway lantern. Plaintiff's theory was that defendant had negligently placed this highly explosive mixture instead of solely kerosene, a much less volatile fluid, in the tank from which plaintiff had drawn his lamplighting fluid. Plaintiff proved only that he was injured by the explosion and that defendant was the individual responsible for filling the tank.

Since in *Johnston* over 24 hours had elapsed from the time defendant filled the tank to plaintiff's injury, it was obvious that, absent evidence tending to show that defendant alone had access to the tank, gasoline could have been added to the tank either during that

---

[1] Indeed it is perfectly possible that no one was in the parked rig when it was hit. If so, how would it have served the plaintiff to have mentioned the fact the rig was unoccupied?

24 hour period or even prior to defendant's last delivery. Accordingly, we held that plaintiff had failed to connect defendant with his injury, and that to permit the factfinder to infer that defendant was negligent would therefore be unreasonable.[2] In the instant case, it was reasonable to infer from the location of the damage on the two vehicles that a rear end collision occurred with the parked rig. Moreover, we have held in several cases that a decedent was contributorily negligent *as a matter of law* when, on a clear night, his vehicle collided with the rear of another. See *Griffith v. Weiner,* 373 Pa. 184, 95 A. 2d 517 (1953); *Grutski v. Kline,* 352 Pa. 401, 43 A. 2d 142 (1945). If such is the case, the location of the damage here should be sufficient to create a question for the factfinder.

Having concluded that the plaintiff's theory rests on an inference which could reasonably be drawn, I

---

[2] A more analogous case to the present situation than *Johnston* is *Garber v. Great A. & P. Tea Company,* 397 Pa. 323, 155 A. 2d 346 (1959). Plaintiff in *Garber* was injured while shopping when a can of Wesson oil fell on her. The alleged negligence was improper stacking of the cans. Affirming plaintiff's verdict, we said: "We think that the case was properly left within the competence of the jury. The cans were so stacked that they were dangerous because their construction would make them likely to fall over, and Mrs. Garber was standing, doing nothing, when one of them did fall on her. Defendant's responsibility for such an occurrence is an entirely reasonable conclusion under Smith v. Bell Telephone Co. of Pennsylvania, 397 Pa. 134 (1959), 153 A. 2d 477, where we said: 'It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. The judge cannot say as a matter of law which are facts and which are not unless they are admitted or the evidence is inherently incredible. . . . The facts are for the jury in a case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant.'" (397 Pa. at 325, 155 A. 2d at 347-38)

hardly think it is open to doubt in this case that plaintiff's evidence preponderates so as to sustain the court's verdict. Defendants introduced no evidence at all. As to plaintiff's case, as the majority's review of the evidence suggests, no other explanation of the accident was even faintly indicated.

Finally, even on the majority's own theory—that appellee failed to prove negligence below—its disposition in my view is improper. Rather than remand for a new trial as the majority does, on its theory of the absence of negligence the court below should have been directed to enter a verdict for appellant. Accordingly, I dissent.

Mr. Justice MUSMANNO joins in this dissenting opinion.