Handfinger et al., Appellants, *v.* Philadelphia
Gas Works.

Argued April 28, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Arnold M. Kessler,* with him *Bernstein, Bernstein, Harrison & Kessler,* for appellants.

*Richard J. Gordon,* with him *Dilworth, Paxson, Kalish, Kohn & Levy,* for appellees.

Opinion by Mr. Justice Jones, July 2, 1970:

Faye Handfinger and her father initiated a trespass action against Philadelphia Gas Works and United Gas Improvement Company in the Court of Common Pleas of Philadelphia County.[1] After a nonjury trial which resulted in a verdict for the plaintiffs, UGI filed alternative motions for judgment *non obstante veredicto,* for a new trial, or for a remittitur. The court en banc, the trial judge dissenting, set aside the verdict and entered judgment for the defendants n.o.v. The plaintiffs have appealed from the entry of that judgment.

On an appeal from the entry of a judgment n.o.v., all of the evidence and the reasonable inferences therefrom must be viewed in the light most favorable to the verdict-winner. *E.g., Axilbund v. McAllister,* 407 Pa. 46, 180 A. 2d 244 (1962). If the plaintiffs have produced sufficient evidence on the basis of which the factfinder could have reasonably inferred the facts necessary to establish UGI's liability, then the judgment n.o.v. was improperly entered. *E.g., Brandon v. Peoples Nat. Gas Co.,* 417 Pa. 128, 207 A. 2d 843 (1965). *See* Act of April 22, 1905, P. L. 286, §1, as amended, 12 P.S. §681.

In 1963, UGI undertook the conversion of approximately 1,640,000 gas appliances in Philadelphia. The conversion was necessary in order to permit the appliances which had been designed for the use of a mixed gas to operate with a straight natural gas, the natural gas having a higher BTU rating. On May 27, 1963, a representative of UGI visited the Handfinger residence and, allegedly, converted a gas stove, including an oven

---

[1] The Philadelphia Gas Works being a division of United Gas Improvement Co., in all proceedings to date the two named defendants have been considered as one. In this opinion, we refer to the defendants as UGI.

and a range with six burners, and a gas heater. Natural gas was first supplied to the Handfinger residence on or about June 24, 1963.

Shortly thereafter, Faye Handfinger's mother telephoned UGI to complain that "when I would turn the jets on, I would have to wait a while, and then all of a sudden you would hear a pop and the flame would go on." Mrs. Handfinger made similar complaints, in September and October of 1963, to UGI servicemen who had been sent to adjust the gas heater. In each instance, she was assured that what she had described was a normal characteristic of natural gas and that she should not be concerned.

On February 3, 1964, Faye Handfinger was badly burned when her clothing was ignited by a flame from one of the top burners on the gas stove. Faye, who was then twelve years old, was the only person present at the time of the accident. She testified that five or six seconds after she had turned on the front middle burner of the range, she heard a "pop" and flames shot out approximately two feet from the burner to ignite her clothing. The next day, in response to a call, a UGI serviceman adjusted the range to the satisfaction of Mrs. Handfinger.

The plaintiffs' theory of liability was based upon the testimony of one expert witness who stated that, given the facts essentially as outlined above, the flare-up occurred either because the burner had not been converted for the use of natural gas, or because the conversion had not been properly done. The central factual issue in dispute at trial was whether the range had, in fact, been converted on May 27, 1963, or at any time prior to the date of the accident.

Because this is an appeal from the entry of judgment n.o.v., we will initially consider only the evidence and the reasonable inferences therefrom which might

support the plaintiffs' theory of liability. *Kaplan v. Kaplan*, 404 Pa. 147, 171 A. 2d 166 (1961).[2] The issue is whether a fact-finder might have found, on the basis of such evidence, that UGI had breached a duty owed to the plaintiffs and that such breach proximately caused the injuries suffered by the plaintiffs. *Lear v. Shirk's Motor Express Corp.*, 397 Pa. 144, 152 A. 2d 883 (1959). "[T]he evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the *only* one which logically can be reached . . . . The facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant. It is the duty of plaintiff to produce substantial evidence which, if believed, warrants the verdict he seeks. The right of a litigant to have the jury pass upon the facts is not to be foreclosed just because the judge believes that a reasonable man might properly find either way." *Smith v. Bell Tel. Co. of Pa.*, 397 Pa. 134, 138-39, 153 A. 2d 477, 479-80 (1959).

If a fact-finder in the case at bar were to believe Faye Handfinger's account of how the accident oc-

---

[2] By way of rebuttal, the defendants offered the testimony of their own expert who stated that even if the range had not been converted, the extent of the "flare-up" would have been no more than a few inches, and certainly not three to six feet as the plaintiffs' expert had testified. Therefore, the defendants questioned whether the accident could actually have taken place as related by Faye Handfinger.

The defendants also presented an "IBM card", filled out by a UGI workman, which indicated that the conversion had been made on May 27, 1963. However, the man who was in charge of the conversion program admitted, on cross-examination, that the IBM cards were occasionally found to be in error. Thus, a particular appliance might be located which had not been converted, although the IBM records indicated that the conversion had taken place.

curred, and were also to believe that the plaintiffs' expert was correct in stating that this indicated either improper conversion or no conversion at all, then liability might properly be placed upon UGI. The plaintiffs having presented evidence which could conceivably establish their theory of liability, the judgment n.o.v. must be reversed.

In addition to moving for judgment n.o.v., the defendants made an alternative motion for a new trial. The second motion was also denied by the trial court, but it was not disposed of by the court en banc, in view of that court's conclusion that the plaintiffs had failed to establish a prima facie case of negligence. However, the court en banc did express its opinion that if a judgment n.o.v. were not proper, then the defendants would certainly be entitled to a new trial. Two reasons were assigned for this conclusion: (1) the finding of negligence was against the weight of the evidence because, the evidence being "clear and unequivocal" that the conversion was actually made, plaintiffs' expert testimony to the contrary was inherently incredible; and (2) it was allegedly improper for plaintiffs' expert to base his opinion, in part, upon the evidence that the stove had been repaired on the day following the accident.

This Court has broad remedial powers (Act of May 20, 1891, P. L. 101, §2, 12 P.S. §1164; Act of June 16, 1836, P. L. 784, §1, 17 P.S. §41; *Richette v. Pennsylvania R. R.*, 410 Pa. 6, 187 A. 2d 910 (1963)), and in a proper case we can simultaneously reverse a judgment n.o.v. and order a new trial. *Brandon v. Peoples Nat. Gas Co.*, 417 Pa. 128, 207 A. 2d 843 (1965). However, in doing so we must bear in mind that the criteria for granting a new trial are quite different from those to be applied in considering a motion for judgment n.o.v. *Bohner v. Eastern Express, Inc.*, 405 Pa. 463,

175 A. 2d 864 (1961). Because of these differing standards, our normal disposition of a case such as the instant one would be to remand the record to the lower court for disposition of the defendants' motion for a new trial. *Cummings v. Nazareth Borough*, 427 Pa. 14, 233 A. 2d 874 (1967); *Clewell v. Pummer*, 384 Pa. 515, 121 A. 2d 459 (1956). However, in the instant case the lower court has already stated its position and the reasons therefor, so that it would be a useless act to remand this record, only to have the court en banc reiterate what it has already said.

Our task is to view all of the evidence and to determine whether the trial court abused its discretion or committed an error of law in granting or denying the motion for a new trial. *Austin v. Ridge*, 435 Pa. 1, 255 A. 2d 123 (1969); *Noel v. Puckett*, 427 Pa. 328, 235 A. 2d 380 (1967). The court en banc would have awarded a new trial, due to the plaintiffs' expert's use of evidence of post-accident repairs when the expert formed his opinion as to the cause of the accident. We need not and do not determine whether the evidence of these repairs was properly admitted. The defendants interposed no objection at the time that the opinion was given and, therefore, the objection has been waived and cannot now be raised. *Jones v. Treegoob*, 433 Pa. 225, 249 A. 2d 352 (1969).[3] Therefore, the court en banc's determination as to the necessity of a

---

[3] We note that UGI itself subsequently produced the man who made these repairs, and he testified at length as to his action on the day following the accident. In fact, his testimony categorically supported UGI's basic contention that the conversion had been properly made prior to the accident.

The repairman removed a No. 54 orifice, which was the size that was put on the range when converted, and replaced it with a No. 55. He stated that there would be no appreciable difference in the performance of these two sizes, but merely felt that he should do something to make Mrs. Handfinger feel better.

new trial was apparently based, in part, on an error of law.

The lower court also expressed its view that the opinion evidence of plaintiffs' expert, upon whose testimony the case for liability must rest, could not reasonably have been believed in the face of UGI's direct and affirmative rebuttal evidence. On the one hand, plaintiffs' expert stated that the accident must have been the result of a failure to convert the gas range, or possibly an improper conversion. On the other hand, UGI's expert stated that the accident could not possibly have happened as Faye Handfinger said that it did, even if the range had not been converted. Additionally, UGI offered direct evidence that the range had been properly converted, that the company's regular business records indicated that the alteration had been made on May 27, 1963 and the repairman who examined the range the day following the accident stated unequivocally that the range had been properly converted.

We recognize that, in view of the direct evidence that the range had been properly converted, the plaintiffs' expert testimony, based upon theory, must be considered of low grade and should have been afforded little weight. *Girsh Trust,* 410 Pa. 455, 189 A. 2d 852 (1963). Nevertheless, this does not mean that this testimony must be disregarded. The factual issue of conversion was presented upon evidence sufficient in nature and resolved by the trial judge. We find it impossible to state, on the basis of this record, that his verdict was against the clear weight of the evidence. Accordingly, it would be improper for this Court to overturn the decision of the fact finder and order a new trial.

Judgment n.o.v. reversed. Judgment directed to be entered on the verdict.