Hampton, Appellant, *v.* S. S. Kresge Company.

544

*Thomas J. Godlewski,* with him *O'Connell, Silvis & Godlewski,* for appellant.

*Christ. C. Walthour, Jr.,* with him *Kunkle, Walthour and Garland,* for appellee.

OPINION BY HOFFMAN, J., June 14, 1973:

Appellant contends that she produced sufficient evidence to have her case go to a jury on material issues of fact, and that the trial court committed reversible error in granting defendants' motion for compulsory nonsuit.

An action in trespass was instituted by Laura May Hampton as a result of injuries sustained in an accident occurring on June 26, 1964. At approximately 9:00 p.m. on the evening of the accident, Mrs. Hampton was shopping in a K-Mart self-service department store. She was accompanied by her fourteen-month old daughter, her mother-in-law (now deceased), and her husband's aunt, Dorothy Hampton. While walking through one of the aisles of the store, appellant was struck by five or six plastic toy boats and wooden oars, which had fallen from a shelf overhead. On November 8, 1971, trial was held on the issue of liability alone before the Honorable Earl S. KEIM of the Common Pleas Court of Westmoreland County and a jury. After plaintiff rested, the defendants moved for nonsuit. The trial court granted defendants' motion and discharged the jury. It is from a court en banc denial of plaintiff's motions to strike the nonsuit and grant a new trial that this appeal followed.

Plaintiff testified during the course of the trial that she was in the aisle looking for swimming equipment for her daughter. She said that she was in the aisle for about ten minutes and noticed some toy boats stacked on the top row of a shelf protruding out into

the aisle. The boats were approximately nine feet off the ground. Appellant testified that the boats were shaped like rowboats and were approximately five feet long and two and one-half feet wide. They were stacked upside down and placed one inside the other. The back of the boats rested on the rear perpendicular portion of the shelf and protruded upward to the rear; while the pointed nose of the boat angled downward. In this slanted position, the boats rested on the shelf. No one was seen in the area of the boats during the time appellant was in the aisle. Appellant's aunt testified in the same manner as to the approximate dimensions, position, and undisturbed nature of the boats, as well as the observed estimations of the dimensions of the shelves upon which the boats were situated. She further testified that she saw the boats in the last immeasurable moment as they slid from their resting place and fell to the floor striking appellant.

Appellant submitted an offer of proof that an expert witness, a safety engineer, was ready to testify as to the center of gravity of said boats and the tendency of those boats to fall from their allegedly precarious position; he was not permitted to testify. The trial judge ruled that as no evidence was produced as to the weight of the boats and as precision in the dimensions of the boats and shelf were lacking such testimony would be mere conjecture.

Finally, appellant called as on cross-examination the store manager of K-Mart, who testified that in his opinion it would be impossible for boats to be stacked in the manner indicated by plaintiff at the height asserted. Though plaintiff called the store manager as on cross-examination the trial judge ruled that appellant was bound by this testimony.

Thereafter, liability testimony was concluded and the nonsuit entered. The court en banc stated in its

opinion: "This Court is of the opinion that the testimony would have to be more precise and definite as to the dimensions and weight of the boats, angle and stacking, dimensions and construction of the shelf or shelves involved to bring this case within the ambit of Garber v. Great Atlantic and Pacific Tea Company, 397 Pa. 323 (1959), wherein the Court held that improper stacking of goods in a store which cause those goods to fall and injure the plaintiff could be the basis of liability. . . . We just cannot permit the Jury to guess and speculate when the necessary evidence is not present." We do not agree.

It is a fundamental rule that in all negligence cases the plaintiff must establish a prima facie case of negligence and causation. *Evans v. Otis Elevator Co.*, 403 Pa. 13, 168 A. 2d 573 (1961). The fact that an injury is sustained as a result of a falling object does not relieve plaintiff of that burden of proof. Certainly, the mere fact that a falling object caused injury to a plaintiff does not take a case to a jury, without *any* proof of what caused it to fall. *Stewart v. Morow*, 403 Pa. 459, 170 A. 2d 338 (1961). Nevertheless, our Supreme Court has often said that in cases of falling objects "the proof necessary to establish negligence under the circumstances need be very slight." *Stewart v. Morow*, supra at 462; *Rucinski v. Cohn*, 297 Pa. 105, 114, 146 A. 445 (1929); *Dougherty v. Phila. Rapid Transit Co.*, 257 Pa. 118, 124, 101 A. 344 (1917).

The Pennsylvania Supreme Court in *Garber v. Great Atlantic & Pacific Tea Company*, 397 Pa. 323, 155 A. 2d 346 (1959), stated to what degree and with what certainty the "slight" proof of negligence had to rise. In *Garber*, plaintiff was shopping in defendant's self-service store. She was standing by a display of cans in the center of the aisle. Her children stood nearby, but no one else was in the vicinity of the display. The

cans were piled three high, each ten inches in height, making a symmetrical pyramid of about thirty inches high. Suddenly, and without anyone touching the cans, one of the cans fell to the floor striking plaintiff on her foot. No one, including the plaintiff, saw the can fall; however, it was apparent that the symmetrical pyramid lacked the can which would have been at the top of the column. Defendant's store manager stated that the cans were usually stacked flat and not in such a dangerous fashion. The Court said at 325-326 of its Opinion: "Defendant's responsibility for such an occurrence is an entirely reasonable conclusion under Smith v. Bell Telephone Co. of Pennsylvania, 397 Pa. 134, (1959) 153 A. 2d 477, where we said: 'It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. The judge cannot say as a matter of law which are facts and which are not unless they are admitted or the evidence is inherently incredible . . . . The facts are for the jury in a case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant.'

"The jury was therefore free to discard less useful hypotheses, such as a slight earthquake, the jarring of a passing truck, a small boy with a slingshot, or a clumsy fellow customer. There is nothing inherently unreasonable or incredible about the defendant's negligent stacking."

We believe that the evidence produced by the plaintiff in the instant case was sufficient for a jury to infer defendant's liability, either from the standpoint of negligent stacking or on the theory of "notice" to the defendant of the dangerous condition of the boats

caused by some unknown third person in causing the boats' disarray.

Plaintiff and her aunt testified that the boats which were five feet long and two and one-half feet wide were stacked upside down one inside the other. They both stated that the boats jutted out into the aisle some nine feet off the ground. Furthermore, they observed that the boats were on the top shelf slanted on a downward angle the rear of which rested on the shelf itself. The store manager testified that approximately 69 of 84 persons working in the store were responsible for stacking and patrolling the aisles.[1] The record further discloses that an employee was at plaintiff's side in less than a minute after the accident. Other than plaintiff and those accompanying her no one was in the aisle, and according to the testimony, absolutely no one touched the boats in question. Finally, plaintiff and her aunt both stated that they were in the aisle for about ten minutes and the boats were so situated during that interval in plain view, as the boats were the only items protruding into the aisle.

We believe that the instant case is distinguishable from those cases which imposed no liability upon the defendant. A review of the case law discloses that in those falling object cases plaintiff produced *no* evidence as to method of stacking, the position of the object prior to falling, or in fact the source of the object. See,

---

[1] The store manager, who was in New York on the date of the accident and did not view the boats in a stacked position, was called as on cross-examination, testifying in the following manner: "Q. Did you yourself ever stack toy boats like this in any store? A. Not the way she has them described. Q. Not like that. That's ludicrous, isn't it? A. I don't think they can be stacked that way. Q. Do you mean they couldn't be stacked that way because they'd fall down? A. No, they couldn't be stacked that high. Q. That high? A. Yeah. Q. Okay, because they'd fall down? A. No, I didn't say that."

e.g., *Stewart v. Morow,* supra (a mirror falling from a mantle) ; and, *Cohen v. Penn Fruit Company,* 192 Pa. Superior Ct. 244, 159 A. 2d 558 (1960) (a can falling from an unknown source). Plaintiff, in the instant case, described the position of the boats, the manner of stacking prior to the accident, the angle and dismensions of the boats in relation to the shelf with the degree of certainty which was available to her,[2] and the absence of disturbance of the array by a third person.

Like the case of *Doerflinger v. Davis,* 412 Pa. 401, 194 A. 2d 897 (1963), which involved the unexplained fall of a huge 6 foot high box left in defendant's aisle injuring the plaintiff, we believe "[t]he difference in the size and potentially dangerous condition of this [group of stacked boats on a shelf nine feet above the floor], and the small mirror on a mantel in the Stewart home, together with the other facts and circumstances above mentioned are sufficient to distinguish the Stewart case from the instant case." *Doerflinger v. Davis,* supra at 403.

We further hold that two evidentiary rulings made by the trial court were likewise erroneous. At the conclusion of the testimony of the store manager called as on cross-examination by the plaintiff, the trial court held that plaintiff was bound by the manager's testimony that the boats could not "be stacked that high." Aside from the fact that the store manager was not qualified as an expert engineer able to state such an

---

[2] Defendant was unable to produce records in response to Interrogatories or at trial with respect to the model or manufacturer of the boats, the size or dimensions of the boats, the size, dimensions or type of shelving used to display the boats, and other such vital physical data. Absent this information, the plaintiff should not be required to describe with mathematical exactitude those weights, dimensions or types of boats and shelving that were present in 1964 for a trial taking place in 1971. Such a burden of proof would be insurmountable.

opinion, a party is not bound by the testimony of a witness called as on cross-examination, unless that testimony is uncontradicted. *Conley v. Mervis,* 324 Pa. 577, 188 A. 350 (1936). Both plaintiff and her aunt testified that the boats were in fact piled in the fashion described on the top row of a shelf nine feet off the floor. This testimony contradicted the manager's "opinion" that they could not be stacked that high. Plaintiff was not therefore bound by the testimony of this witness, who was not present at the scene to make such an observation in the first place.

The trial judge also refused to permit the plaintiff to call a safety engineer who was offered to testify concerning the center of gravity of the boats and the dangerous tendency of such boats, stacked in the manner described by the plaintiff, to fall from the shelf. Plaintiff and her witness had testified that the boats were approximately five feet in length and two and one-half feet in width. Based upon their recollection, they also stated that approximately five or six boats were stacked upside down one within the other. They were unable to say how thick the boats were, but did testify that the boats were constructed of what appeared to be heavy plastic. They further recalled that the boats were stacked on an angle on the top row of a shelf, nine feet above the floor. It was also ascertained that the plaintiff was thwarted in obtaining more specific data with respect to the dimensions, weight and manufacture of either the boats or the shelves, as defendant failed to produce any records whatsoever. We believe that the plaintiff and her witness both provided sufficient information upon which a hypothetical question could be framed and submitted to an expert witness. If, in fact, plaintiff was successful in establishing the competency of its safety engineer to testify as an expert, she should

have been permitted to seek that witness' opinion based on the evidence in the record.

Order of the lower court is reversed, judgment of nonsuit is vacated, and the case remanded for a new trial.

JACOBS, J., dissents.