# Propert, Appellant, *v.* Flanagan et al.

*Negligence—Fire—Evidence—Several possible causes—Intervening cause—Wind—Contributory negligence.*

1. In an action to recover for loss from alleged negligence caused by a fire, the law does not require proof by direct evidence that the fire was caused in a particular way, but it is necessary to establish not only that it could possibly come from the cause assigned, but was the probable and natural cause, and this may be shown by circumstantial as well as direct evidence.

2. If there are other independent causes present from which the fire might have originated, plaintiff must show defendant's acts or omissions produced the injury; the other possible causes must be eliminated.

3. Defendant cannot allege as a defense that an ordinary high wind was the intervention of an independent and unforeseen cause, inasmuch as the danger of ordinary wind helping a fire to spread is one of the things to be naturally anticipated.

4. Plaintiff cannot be charged with contributory negligence in not entering defendant's property and getting the fire under control, where it appears he endeavored to put the fire out at the boundary fence, and he could not control the movement of burning material blown through the air.

5. Where defendant's negligence appears by direct evidence, concurrent negligence of another will not excuse him from the consequence of negligence.

Argued January 15, 1923. Appeal, No. 214, Jan. T., 1923, by plaintiff, from order of C. P. No. 1, Phila. Co., Sept. T., 1920, No. 422, refusing to take off nonsuit, in case of Joseph H. Propert v. Thomas L. Flanagan et al., trading as James D. Dorney Co. Before FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Trespass for loss of barn and outbuildings destroyed by fire alleged to have been caused by defendant's negligence. Before BARTLETT, J.

The opinion of the Supreme Court states the facts.

Nonsuit; refusal to take off. Plaintiff appealed.

*Error assigned,* inter alia, was order, quoting record.

*William H. Peace,* for appellant.—The case was for the jury: Esher v. R. R., 28 Pa. Superior Ct. 387; Baker v. Gas Co., 157 Pa. 593; Stephenson v. R. R., 20 Pa. Superior Ct. 157; Knickerbocker Ice Co. v. R. R., 253 Pa. 54.

*Charles J. Sharkey,* for appellees, cited: Campbell v. Brandywine Co., 52 Pa. Superior Ct. 511; Ginter v. R. R., 262 Pa. 474; Wagner v. Traction Co., 212 Pa. 132; Hunter v. R. R., 45 Pa. Superior Ct. 477; Decker v. R. R., 57 Pa. Superior Ct. 432.

OPINION BY MR. JUSTICE KEPHART, March 19, 1923:

This action was brought to recover for loss of a barn and outbuildings destroyed by fire. The court below directed a nonsuit for the reason plaintiff failed to establish the fire was due to the negligence of defendant alone; it might have come from one of three causes: a fire on another property adjoining defendant's, a defective stove pipe in plaintiff's washhouse, or the fire on appellee's dump. The negligence charged and attempted to be proven was starting and continuing a fire in a dangerous place, among materials that were carried by high winds then ensuing.

The law does not require proof by direct evidence that a fire was caused in a particular way, but it is necessary to establish not only that it could possibly come from the cause assigned, but that was the probable and natural cause. This may be shown by circumstantial as well as direct evidence. If there are other independent causes present from which the fire might have originated, the plaintiff must show defendant's acts or omissions produced the injury; the other possible causes must be eliminated: Bannon v. P. R. R. Co., 29 Pa. Superior Ct. 231, 238; Decker v. N. Y. C. & H. R. R. R. Co., 57 Pa. Superior Ct. 432, 441; Bartolet v. Dir. Gen., 74 Pa. Superior

Ct. 29; Knickerbocker Ice Co. v. P. R. R. Co., 253 Pa. 54, 61; McAvoy v. Kromer Bros., 277 Pa. 196.

Plaintiff testified a fire was burning on defendant's dump in the midst of paper and other inflammable materials. Notice was given in the morning to the foreman that, owing to a high wind, the fire would be carried to the buildings. No attention was paid to this notice; nor was any effort made to extinguish or control the fire, but more fuel was added. A little later burning paper was blown from defendant's dump to appellant's property. At noon this paper ignited the grass and fences, close to the buildings subsequently burned. This was put out by defendant's foreman, plaintiff and others; a few minutes afterwards the barn was discovered in flames.

It is admitted there was another fire on Curren's dump, adjoining defendant's. The rubbish thereon is not described, nor was it shown that there were any papers or other materials in it to be carried by the wind. Foreman Shetler testified to a fire in the stove in plaintiff's washhouse. Nothing was shown to be unusual about the stove, nor that the fire in it could in any way contribute to the conflagration; it did not start in that room. The witness states the barn was set on fire by burning paper, and, outside of the fact that there was a fire in the stove and on Curren's dump, there was not even a suspicion the buildings might have caught from these sources. Plaintiff, testifying as to the fire, states: "Q. Now, after you got that information [as to the start of the fire], what did you do and what did you say? A. I ran out and I jumped through the back window of my washhouse and helped them put it out. Q. What did you see? A. Saw the fire burning. Q. Where? A. The paper, right back to the westward. [Defendant's dump was in that direction.] Q. What was burning? A. The paper, and the fence would have burned......Q. You saw the paper burning and the fence burning? A. Yes. Q. And you put the fire out at the fence? A. We thought we had. Q. How close had this paper blown up to your barn?

A. Half of the field, within seven or eight feet of the barn......A. I saw the fire start in the barn.   Q.— Now, how long was that after you had stamped out the fire at the fence?   A. I guess ten minutes was the limit. ......Q. Now, Mr. Propert, when you say the wind was blowing all day there, will you please tell us what you saw blowing?   A. Well, the fire was burning and the paper was blowing and that is what made me tell them about burning me down.   Q. Which way was the paper blowing?   A. Coming right dead west, probably a little bit to the north, northwest, right up the dump.   Q. Where did the paper come from?   A. Off the dump.   Q. Which dump?   A. Flanagan and Dorney's dump.   Q. When you went out there to put the fire out, did you see any paper blowing then?   A. There was plenty of it blowing when we put it out.   Q. Where did it come from?   A. Came from the dump.   Q. Whose dump?   A. Flanagan and Dorney's.   Q. Was there any of that paper that blew up there burning?   A. We put several pieces out and Mr. Shetler knows it." This evidence is corroborated in part by others.

The offending dump was built close to the line of plaintiff's property; burning paper was seen coming from it, that partially destroyed the fence, and in a few minutes thereafter the fire started in the barn, a few feet from the fence. This evidence might be regarded as being very close to direct evidence that the origin of the destruction of plaintiff's barn was defendant's dump. If other independent causes existed and have not been eliminated, it must be conceded, under this positive testimony, the facts established negligent conduct in this defendant, and if there was concurrent negligence from other causes contributing or likely to contribute to the loss, that would not relieve defendant from the wrong his negligent act is shown to have inflicted: Klauder v. McGrath, 35 Pa. 128; Borough of Carlisle v. Brisbane, 113 Pa. 544; O'Malley v. P. R. T. Co., 248 Pa. 292, 297; Siever v. Pbgh., C., C. & St. L. Ry. Co., 252 Pa. 1, 10;

Jaras v. Wright, 263 Pa. 486, 491; Hitchins v. Wilson, 68 Pa. Superior Ct. 366, 370.

It is argued the high wind was the intervention of an independent, unforeseen cause, without which this plaintiff could not have suffered, and defendant was not bound to anticipate the action of this intermediate agency. In Pittsburgh Forge & Iron Company v. Dravo Construction Company, 272 Pa. 118, 124, Brother SADLER said: "The presence of such a condition [the air currents or ordinary wind] might have been, or the jury could say 'should have been,' observed, and, in view of the atmospheric conditions, it might have been obvious that the fire would cause the injury which did result. 'No doubt a hurricane or a gale may be such as to be plainly out of the usual course of nature, and therefore to be pronounced by the court as the intervention of a new cause. ......But the ordinary danger of wind helping a fire to spread is one of the things to be naturally anticipated': Haverly v. Railroad Co., 135 Pa. 50, 60; P. R. R. Co. v. Hope, 80 Pa. 373; 22 R. C. L. 162; 20 L. R. A. (N. S.) 92, n."

The wind was blowing burning paper from defendant's dump. Plaintiff's presence could not stop it; he had done all that was required when he notified defendant to extinguish the fire. In spite of this warning, more fuel was added, the fire enlarged, and the burning material was taken by the wind to the adjoining premises. When plaintiff endeavored to put the fire out at the fence, he did all that could then reasonably be expected; he was not able to control the movement of the burning material blown through the air. The court could not say as a matter of law he was guilty of contributory negligence in not entering defendant's property and getting the fire under control. As the record now stands, the court committed reversible error by entering the compulsory nonsuit.

The judgment of the court below is reversed, and the record is returned with a procedendo.