## STATE FARM FIRE & CASUALTY COMPANY

v.

## Mark STEFFEN, et ux.

### Civil Action No. 09–4965.

United States District Court,
E.D. Pennsylvania.

April 19, 2013.

John Neumann Hickey, Law Offices of John N. Hickey, Media, PA, for State Farm Fire & Casualty Company.

Chilton G. Goebel, III, Gary R. Gremminger, German Gallagher & Murtagh, Philadelphia, PA, for Mark Steffen, et ux.

## MEMORANDUM

DALZELL, District Judge.

Plaintiff State Farm Fire & Casualty Company ("State Farm"), as subrogee, invoked our diversity jurisdiction [1] and filed a one-count subrogation complaint against defendants Mark and Patricia Steffen alleging that their negligence caused a July 3, 2009 fire that damaged its insured's property.

The Steffens filed a motion for summary judgment. They claim that State Farm's Pennsylvania common law negligence claim must succumb to summary judgment

---

**1.** Our March 14, 2013 Order (docket entry # 33) addresses the basis for our diversity jurisdiction.

because State Farm lacks any admissible evidence as to the cause of the fire that destroyed its insured's neighboring property, such that it cannot present a *prima facie* negligence claim. *See* Fed.R.Civ.P. 56(c)(2). Embedded in the Steffens' summary judgment motion is a *Daubert* motion that seeks to exclude Robert Kersey, Jr.'s expert opinion evidence on the issue of fire causation because it does not comply with Fed.R.Evid. 702.

State Farm filed its response in opposition to the summary judgment motion, contending that its negligence claim should withstand summary judgment because Kersey's expert opinion evidence is admissible under Rule 702. Alternatively, State Farm asserted that, at a minimum, it was entitled to a summary judgment-defeating adverse inference on the fire's causation because non-party Nationwide Mutual Insurance Company ("Nationwide"), the Steffens' insurer and (so its argument goes) its agent, spoliated the fire scene (the "vicarious spoliation" theory).[2]

In reply, the Steffens reasserted their lack of causation evidence argument and claim that the undisputed summary judgment record demonstrated that Nationwide was not their agent at the time Nationwide allegedly spoliated the fire scene, thus foreclosing State Farm's vicarious spoliation theory.

Given the nature of the parties' summary judgment briefing, we convened a *Daubert* hearing on April 10, 2013 to address the admissibility of Kersey's expert opinion evidence. We also ordered supplemental briefing on the *Daubert* issue and on the vicarious spoliation theory. Upon consideration of the parties' submissions and the hearing testimony, we conclude that additional briefing is not necessary and thus this matter is ripe for decision.

For the reasons detailed below, we hold that Kersey's expert evidence is inadmissible under Fed.R.Evid. 702 and that State Farm has not pointed to any other admissible evidence from which a reasonable factfinder could determine the fire's cause.[3] Consequently, State Farm has failed to state a *prima facie* case for negligence and its single negligence claim must succumb to summary judgment. State Farm's inability to point to any evidence that could lead a reasonable factfinder to conclude that Nationwide was the Steffens' agent at the time the fire scene was allegedly spoliated also defeats its vicarious spoliation theory and, thus, does not resurrect its negligence claim.

## I. *Summary Judgment Standard*

"Summary judgment should only be granted if 'there is no genuine dispute as to any material fact.'" Fed.R.Civ.P. 56(a). A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 . . . (1986). A dispute is material if it could affect the outcome of the case. *Id.* In considering the record, we must draw all reasonable inferences in favor of the non-moving party[.] [*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).]" *Lichtenstein v.*

---

**2.** State Farm filed an addendum to its response without first seeking our leave to do so. We will not consider that unauthorized submission. *See* March 14, 2013 Order n. 1; Loc. R. Civ. P. 7.1(c) ("The Court may require or permit briefs or submissions if the Court deems them necessary.").

**3.** It bears noting that neither party demanded a jury and thus in any trial we would be the finder of fact.

*Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir.2012).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court addressed the movant's burden of production on a motion for summary judgment where the movant contended that a nonmovant plaintiff lacked sufficient evidence to establish an essential element of her case. Though Justice Brennan's dissent disagreed with the *Celotex* Majority's application of the summary judgment standard to the facts of that case, he stated that he "would have [nevertheless] written separately to explain more clearly the" summary judgment standard. *Id.* at 329, 106 S.Ct. 2548 (Brennan, J., dissenting); *see also id.* at 334, 106 S.Ct. 2548. His analysis is instructive.[4]

Justice Brennan explained that the movant bears the burden of establishing the "nonexistence of a 'genuine issue'", and "[t]his burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.* at 330, 106 S.Ct. 2548 (Brennan, J., dissenting). Moreover, "[t]he burden of production imposed by Rule 56 requires the moving party to make a prima facie showing that it is entitled to summary judgment .... If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production ... [by] demonstrat[ing] to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* at 331, 106 S.Ct. 2548 (Brennan, J., dissenting) (emphasis added). And "[i]f the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Id.* (Brennan, J., dissenting) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In light of this framework, on a motion for summary judgment "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). "[W]hen such an objection [to the admissibility of summary judgment record evidence] is made [under Rule 56(c)(2) ], the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Gannon Intern., Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir.2012) (citing the Rule 56 Advisory Committee Note (2010)); *id.* (noting that on summary judgment the standard for admissibility is "whether it *could* be presented at trial in an admissible form") (emphasis in original); *see also Heffernan v. City of Paterson*, 492 Fed.Appx. 225, 228 (3d Cir.2012) (citing Fed.R.Civ.P. 56(c)(2) because it "permit[s] challenges to supporting evidence"), *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir.2012) (discussing the new Rule 56(c)(2) mechanism); *accord* 1 Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary* Rule 56 nn. 104–106 & accompanying text (current through March 2013) (citing the Advisory Committee's Note (2010)).

## II. *Factual Background*

Drawing all reasonable inferences in non-movant State Farm's favor, we first consider undisputed background facts.

---

4. *See In re Bressman*, 327 F.3d 229, 237 n. 3 (3d Cir.2003) (relying on Justice Brennan's dissenting *Celotex* opinion because it "does not differ with the opinion of the Court regarding the appropriate standards for summary judgment".)

On July 3, 2009, a fire engulfed Mark and Patricia Steffen's house in Marcus Hook, Pennsylvania. This fire spread to and damaged several neighboring properties. Nationwide, the Steffens' insurer at the time of the fire, began a first-party insurance claim investigation at the Steffens' badly burned residence. *See, e.g.,* MSJ Resp. Ex. D 7:8–13.

One of the neighboring fire-damaged properties was owned by William Brazell, State Farm's insured. State Farm paid Brazell for his fire-related claim and became subrogated to certain of his rights and interests arising from the fire. On October 29, 2009, State Farm, as subrogee, filed this one-count negligence complaint.

On February 17, 2010, Nationwide, the Steffens' insurer, initiated an interpleader action that was assigned to our docket as related to State Farm's negligence suit. *See Nationwide Mutual Ins. Co. v. State Farm Fire & Casualty Co., et al,* E.D.Pa. Civil Action No. 10–671. Nationwide named State Farm as one of the interpleader defendants. State Farm did not file any counterclaims against Nationwide in that suit.

On January 4, 2011 we dismissed Nationwide from the related interpleader action and on August 2, 2011 we approved the interpleader defendants' stipulation of dismissal with prejudice and ratified the parties' agreed-upon distribution of the $100,000 interpleaded funds that Nationwide had deposited into the Registry of the Court. State Farm agreed to take $37,410 from that interpleader fund, though it expressly reserved its right to continue to pursue its negligence claim against the Steffens in this action.

## III. *The Steffens' Summary Judgment Motion*

At bottom, the Steffens' summary judgment motion, reply, and supplemental brief argue that: (1) there is no causation evidence in the record that we may properly consider, and (2) State Farm's vicarious spoliation theory must fail. We consider these contentions in turn.

### A. *Lack of Causation Evidence Warrants Grant of Summary Judgment*

■ Causation is an essential element of a *prima facie* negligent fire claim under Pennsylvania law. *See Propert v. Flanagan,* 277 Pa. 145, 120 A. 783, 783 (1923) (" '[t]he law does not require proof by direct evidence that a fire was caused in a particular way, but it is necessary to establish, not only that it could possibly come from the cause assigned, but that [it] was the probable and natural cause' "); *see also Marrazzo v. Scranton Nehi Bottling Co.,* 422 Pa. 518, 223 A.2d 17, 23 (1966) (citing *Propert* ); *Lanza v. Poretti,* 537 F.Supp. 777, 783 (E.D.Pa.1982) (arising under Pennsylvania law and "recogniz[ing] that a plaintiff in a fire case where careless smoking is alleged to be the cause can rarely do more than present expert testimony as to the fire's cause, and support such testimony by some evidence of smoking on the premises shortly before the fire began. This will usually make out a case of negligence sufficient to put the defendant to proof."). Thus, to survive the Steffens' motion for summary judgment on the basis that there is insufficient causation evidence, non-movant State Farm must point to some admissible evidence on this subject.

But State Farm fails to point to any evidence of the fire's cause here and its negligence claim must as a result succumb to summary judgment. State Farm's response to the motion for summary judgment contends that two items of evidence exist that establish causation: a handwritten statement authored by electrical engineer Randall Marshall, and

Kersey's expert fire causation opinion.[5] Neither evidentiary item is admissible for the purpose of establishing causation.[6]

Our March 14, 2013 Order noted that to the extent State Farm intended to introduce into evidence Randall Marshall's statement for its truth as fire causation expert opinion evidence, *see, e.g.,* MSJ Resp. Ex. B, plaintiff as the proponent would have to address its admissibility at a *Daubert* hearing. State Farm did not offer Marshall as an expert at the hearing and so we will not consider his statement as expert fire causation opinion evidence in light of State Farm's decision.

At the April 10, 2013 hearing, we did not conclusively decide to what extent, if any, Marshall's statement was admissible. We now conclude that Marshall's statement is admissible for the limited purpose for which State Farm concededly offered it: "as [evidence of] one of the foundations for [Kersey's expert] opinion" only. April 10, 2013 Tr. 28:18–20; *see also* NFPA 921 § 4.3.2 (stating that a fire cause investigation is conducted "by an examination of the scene and by a combination of other data collection methods, such as the review of previously conducted investigations of the incident, the interviewing of witnesses or other knowledgeable persons, and the results of scientific testing." [7]). Thus, for purposes of this summary judgment motion, we will consider Marshall's non-expert statement not for its truth but as evidence of "one of the things that [Kersey] relied upon in his opinion." April 10, 2013 Tr. 28:19–20. Since Marshall's statement is not offered as substantive evidence of the fire's cause, we will not consider it as such.

Kersey, in contrast, testified at the hearing. As to the admissibility of his expert opinion evidence on the issue of fire causation, State Farm bears the burden of establishing its admissibility by a preponderance of the evidence. *See Padillas v. Stork–Gamco, Inc.,* 186 F.3d 412, 417–18 (3d Cir.1999).[8] Kersey's expert opinion claims that "[t]he methodology and opinions expressed in this origin & cause report rely primarily upon the 2011 Edition of *NFPA 921—Guide for Fire and Explosion Investigations* and are based upon the Scientific Method as its primary stan-

---

**5.** State Farm contends that "[Richard] O'Brien [Nationwide's origin and cause specialist] . . . says there was a fire within the can . . . [h]e says he just can not rule out something dropping into the can during the fire." MSJ Resp. 11 (citing MSJ Resp. Ex. G 17:8). Even assuming that this hearsay is admissible, a reasonable factfinder could not infer anything from it about the cause of the fire that engulfed the can.

**6.** As we will discuss below, the parties agree that the National Fire Protection Association ("NFPA") 921 Guide for Fire and Explosion Investigations (2011 ed.), if properly applied, provides a reliable fire causation determination methodology. Notably, NFPA 921 § 18.1 ("Fire Cause Determination") provides that "[f]ire cause determination is the process of identifying the first fuel ignited, the ignition source, the oxidizing agent, and the circumstances that resulted in the fire. Fire cause determination generally follows origin determination." Consequently, a fire origin and causation expert will typically opine on two separate issues: the fire's point of origin and its cause. The Steffens' motion for summary judgment, reply, and supplemental briefing—MSJ Mem. 3–4, 8–11; MSJ Reply 1; Steffens Supp. Br. 1—take issue with the admissibility of Kersey's causation opinion only. We therefore need not address the admissibility of Kersey's point of origin opinion.

**7.** Our excerpts from NFPA 921 are taken from Exhibit C to State Farm's response in opposition to the motion for summary judgment, which contains excerpts from this source. MSJ Resp. Ex. C.

**8.** The Steffens' summary judgment motion invokes Fed.R.Civ.P. 56(c)(2) in that they preemptively claim that Kersey's opinion evidence is inadmissible.

dard of care." MSJ Ex. B at 6 of 6. By contrast, the Steffens' motion for summary judgment contends that Kersey's fire causation opinion is actually based on "speculati[on] and [is] unsupported by the evidence", MSJ Mem. 2, and fails to abide by the NFPA 921 protocol and scientific method such that his purported application of that methodology to facts here is not reliable.

We conclude that State Farm has not carried its burden of showing that Kersey's expert opinion evidence could be presented at trial in an admissible form under Fed.R.Evid. 702. State Farm has not established by a preponderance of the evidence that his opinion is "based on sufficient facts or data", Fed.R.Evid. 702(b), nor is it a "reliabl[e] appli[cation of] the principles and methods to the facts of the case", Fed.R.Evid. 702(d).

■ Fed.R.Evid. 702 [9] and *Daubert* and its progeny apply to expert testimony premised on technical and specialized knowledge like Kersey's fire causation expert opinion evidence here. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147–50, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). Though our inquiry's "focus, of course, must be solely on principles and methodology, not on the conclusions that they gen-

erate, a district court must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Industries, Inc.,* 167 F.3d 146, 153 (3d Cir.1999) (internal quotation marks, citations, and alterations omitted).

■ For expert technical testimony to be deemed reliably applied, our Court of Appeals, in recognizing that "the test of reliability is 'flexible' ", *Kumho Tire Co., Ltd.,* 526 U.S. at 141, 119 S.Ct. 1167, has identified a non-exhaustive list of factors we should consider in a reliability analysis:

(1) *whether a method consists of a testable hypothesis;* (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) *the relationship of the technique to methods which have been established to be reliable;* (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put[,]

The plain language of Rule 702 treats sections (a) through (d) of this Rule as separate, independent requirements. Our Court of Appeals continues to apply its cases interpreting the pre–2011 version of Rule 702 in applicable situations governed under the Rule's new language. *See, e.g., ZF Meritor, LLC v. Eaton Corp.,* 696 F.3d 254, 289–90 (3d Cir.2012); *Furlan v. Schindler Elevator Corp.,* No. 12–2232, 2013 WL 1122649, at *2–*3 (3d Cir. Mar. 19, 2013) (table opinion); *see also* Fed. R.Evid. 702 Advisory Committee Notes 2011 Amendments ("The language of Rule 702 has been amended as part of the restyling of the Evidence Rules .... [and] are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.").

**9.** Fed.R.Evid. 702, as recently amended, provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on *sufficient facts* or data;
(c) the testimony is the product of reliable principles and methods; *and*
(d) the expert has reliably applied the principles and methods to the facts of the case. (emphasis added)

*U.S. v. Mitchell,* 365 F.3d 215, 235 (3d Cir.2004) (emphasis added) (quoting *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 n. 8 (3d Cir.1994)); expert opinion evidence "must be based on ... 'methods and procedures ...' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his [or] her belief." *Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir.2003) (internal quotation marks and citations omitted) (emphasis added). Further, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997).

The parties agree that if an expert properly applies the NFPA 921 guidelines, that application would constitute a reliable method for determining fire causation.[10] *Accord Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.,* 394 F.3d 1054, 1057–58 (8th Cir.2005); *Community Ass'n Underwriters of Am., Inc. v. Rhodes Development Grp., Inc.,* No. 09–257, 2013 WL 818596, at *11 (M.D.Pa. March 5, 2013); *Hoang v. Funai Corp.,* 652 F.Supp.2d 564, 567, 570 (M.D.Pa.2009).

In his expert report and *Daubert* hearing testimony, Kersey offers the following fire causation opinion:

> The causation of this fire loss was determined to be an open flame igniting com-

bustible materials within the plastic trashcan. Thus carelessly discarded smoking materials inside the trashcan could not be eliminated.

MSJ Ex. B at 5 of 6; *see also* April 10, 2013 Tr. 48:6–9. Kersey testified that the ignition sequence here was "[o]pen flame dropped into the trash can, ignited combustible materials, and then burning up and consuming the trash can and burning into the porch." *Id.* at 63:25–64:2.

■ Our review of Kersey's expert report and *Daubert* hearing testimony leaves us with no doubt that his "discarded smoking material" opinion is not "based on sufficient facts or data", Fed.R.Evid. 702(b).[11] NFPA 921 § 18.1 explains that "[f]ire cause determination is the process of identifying [1] the first fuel ignited, [2] the ignition source, [3] the oxidizing agent, and [4] the circumstances that resulted in the fire."

Kersey concedes that he cannot identify the first fuel ignited here. April 10, 2013 Tr. 88:10–11 ("Q. What was the first fuel ignited in this case? A. I don't know.").

Though Kersey opines that the "ignition source" is an "open flame" or "some type of combustible in the trash can", to wit, smoking materials, the only support he musters for his assertion that a discarded match or smoldering cigarette butt was the ignition source is Mr. Steffen's status

---

10. Fed.R.Evid. 702(c) is not in dispute. At the hearing, the Steffens also conceded that Kersey was "qualified" as a fire origin and cause expert, April 10, 2013 Tr. 7:24–8:6, thus there is similarly no dispute that the preamble to Rule 702 is satisfied here. We need not reach whether the "fit" requirement in Rule 702(a) is in play here because we conclude that Kersey's opinion evidence is inadmissible on other grounds.

11. The NFPA 921 protocol mimics Fed. R.Evid. 702(b) given that these two sources call for fact and data-based conclusions. *See* NFPA 921 § 18.6.5 ("[a]ny hypothesis formulated for the causal factors (e.g., first fuel, ignition source, and ignition sequence), must be based on facts. Those facts are derived from evidence, observations, calculations, experiments, and the laws of science. Speculative information cannot be included in the analysis"); *id.* § 4.3.5 ("hypotheses should be based solely on the empirical data that the investigator has collected through observation"). Thus, Kersey's failure to base his opinion on facts also evidences his unreliable application of the NFPA 921 protocol here.

as a smoker, nothing more. *Cf.* NFPA 921 § 18.6.5.1 ("it is improper to opine a specific ignition source that has no evidence to support it even though all other hypothesized sources were eliminated").

Consequently, Kersey's proffered ignition sequence is rooted in supposition: his opinion does not rest on any evidence of an "open flame" ignition source, assumes Mark Steffen "dropped" the assumed-to-exist open flame into the trash can, and further assumes "combustible materials"—of which there is no direct or circumstantial evidence—were ignited. Thus, peeling away the layers of assumption undergirding Kersey's causation conclusion reveals that it is in fact nothing more than a hunch that fails to satisfy Fed.R.Evid. 702(b)'s evidence and data-based standard.

■ Kersey's opinion evidence also fails to satisfy another Rule 702 requirement. Though Kersey claims to have followed the NFPA 921 protocol, his method did not consider all available evidence and alternate hypotheses. Moreover, his testimony at the *Daubert* hearing—which demonstrated no willingness to incorporate this overlooked evidence into his opinion [12]—further reveals how distant his technique is from the reliable NFPA 921 protocol that the parties agree should be used in any a fire causation inquiry. Fed.R.Evid. 702(d); *see Mitchell*, 365 F.3d at 235 (listing as one of the factors "the relationship of the technique to methods which have

been established to be reliable" (quoting *Paoli*, 35 F.3d at 742 n. 8)).

Two of our Court of Appeals's reliability factors [13] are lacking in Kersey's "application" of the NFPA 921 methodology, and we cannot conclude that his opinion is supported by good grounds. *See* Fed.R.Evid. 702(d); *Mitchell*, 365 F.3d at 235 (quoting *Paoli*, 35 F.3d at 742 n. 8).

First, even if we were to assume that Kersey's expert report "reliably" ruled out an electrical cause for the fire,[14] NFPA 921 § 18.6.5 provides that

> [t]he process of determining the ignition source for a fire, *by eliminating all ignition sources found, known, or believed to have been present in the area of origin,* and then claiming such methodology is proof of an ignition source for which there is no evidence of its existence, is referred to by some investigators as 'negative corpus.' ... *This process is not consistent with the Scientific Method, is inappropriate, and should not be used* because it generates untestable hypotheses, and may result in incorrect determinations of the ignition source and first fuel ignited [ (emphasis added);]

In speculatively concluding that Mark Steffen caused an open flame to ignite the contents of a trash can, *see* discussion, *supra,* Kersey's reasoning impermissibly relies on precisely this untestable "nega-

---

**12.** This is so even though Kersey's expert report states that "[s]hould additional information be provided or become available, I reserve the right to modify, revise or supersede my opinions and conclusions, where appropriate." MSJ Ex. B at 6 of 6.

**13.** That is, "whether a method consists of a testable hypothesis" and "the relationship of the technique to methods which have been established to be reliable". *Mitchell,* 365 F.3d at 235 (internal quotation marks omitted). Only these factors appear relevant here.

**14.** This is a position State Farm urges us to accept. *See, e.g.,* MSJ Resp. 7 ("defendants ... ignore[ ] the first sentence" of Marshall's statement that the fire was caused in the trash can, but omitting any discussion of the electrical cause hypothesis); MSJ Ex. B at 5 of 6 (speaking of causation without any reference to an electrical cause); April 10, 2013 Tr. 89:12–14 ("Q. Your report does not state that you ruled out any electrical cause to this fire; correct? A. No, sir.").

tive corpus" even though the NFPA 921 protocol that he purports to have followed specifically identifies his approach as inconsistent with the scientific method.

Second, the Steffens also scrutinize Kersey's fidelity to the NFPA 921 method given the manner in which he excluded an electrical cause for the fire. *See* Steffens' Supp. Br. 4 of 45; April 10, 2013 Tr. 89–90. Kersey justified his decision to exclude any electrical cause based solely on Marshall's statement that "[f]ire either electrical from wall wiring or refrigerator in closet. Found that neither is likley [*sic* ]". MSJ Resp. Ex. B; April 10, 2013 Tr. 49:4–5 ("So Randy ruled out the wall wiring and refrigerator, any electrical causes with them"). But Kersey's report and *Daubert* hearing testimony do not take into account Marshall's February 21, 2012 deposition testimony at which he testified that he told Richard O'Brien, Nationwide's cause and origin specialist, MSJ Resp. Ex. D 9:10–18; MSJ Ex. B at 1 of 6, that the electrical wires were too badly burned for him to be able to make a determination as to whether the fire had an electrical cause. MSJ Ex. F 14:22–15:3; *id.* 14:13–21 ("I can't tell whether it was electrical or not" because of melting and "I write things in here that I really shouldn't because the— I'm not the one who determines whether it was a trash can fire. I'm only there to look at the electrical"). Kersey's failure to address this readily available and relevant evidence [15] reveals that his consideration of Marshall's statement focuses only on a small, isolated fragment of evidence that

exists in a much broader evidentiary context.

Kersey's limited analysis of the available data runs afoul of NFPA 921 § 4.3.8's stern warning against "[e]xpectation bias … that occurs in scientific analysis when investigator(s) reach a premature conclusion without having examined or considered all of the relevant data.… The introduction of expectation bias into the investigation results in the use of only that data that supports this previously formed conclusion and often results in the misinterpretation and/or the discarding of data that does not support the original opinion." Notably, Marshall's February 21, 2012 deposition had been completed the day before State Farm's counsel requested Kersey to produce an expert report, MSJ Ex. B at 1 of 6; April 10, 2013 Tr. 12:15–16 ("I was retained by State Farm Insurance Company to conduct an origin and cause investigation on their behalf"). Indeed, Kersey wrote his report six days after Marshall's deposition. MSJ Ex. B at 1 of 6. Even though that deposition was finished, State Farm's counsel inexplicably did not provide its retained expert with any transcript of Marshall's deposition testimony when he requested that Kersey produce an expert report. At the *Daubert* hearing, Kersey testified that he had not asked State Farm's counsel for copies of Marshall's deposition testimony because he "didn't even know [Marshall] had a deposition until [State Farm's counsel] told" him. April 10, 2013 Tr. 93:18– 19. And although Kersey could not recall

---

15. NFPA 921 states that an origin and cause investigation is conducted "by an examination of the scene and by a combination of other data collection methods, such as the review of previously conducted investigations of the incident, the interviewing of witnesses or other knowledgeable persons, and the results of scientific testing." NFPA 921 § 4.3.2. This section of NFPA 921 does not provide an exclusive list of data sources, and Marshall's deposition testimony is certainly consistent with data classified as an interview of another "knowledgeable person". Kersey's failure to consider Marshall's testimony overlooks evidence that NFPA 921 includes among the "other data collection methods" that it sanctions.

when State Farm's attorney first mentioned the existence of Marshall's deposition testimony, Kersey testified before us that it "[p]robably [occurred] at the time when we were speaking about the report." *Id.* at 93:21–22.

Crediting this testimony and the undeniable timeline here, we cannot excuse State Farm's selective disclosure of evidence to its retained expert.[16] State Farm for reasons best known to it interfered with its expert's ability faithfully to apply the NFPA 921 methodology because its omission deprived Kersey of the opportunity to consider and analyze the entire body of relevant and available data. Even when the defendants confronted Kersey with Marshall's deposition testimony at the *Daubert* hearing, he did not address how, if at all, Marshall's deposition testimony would change his opinion's exclusion of any electrical cause. Consequently, we cannot conclude that Kersey reliably applied NFPA 921 when he excluded the electrical cause hypothesis from further consideration.[17] *See* NFPA 921 § 18.7 ("When using the Scientific Method, the failure to consider alternate hypotheses is a serious error. A critical question to be answered by fire investigators is, "Are there any other cause hypotheses that are consistent with the data?" The investigator should document the facts that support the cause determination to the exclusion of all other

reasonable causes"); *see also Community Ass'n Underwriters of Am., Inc.*, 2013 WL 818596, at *11 (finding fidelity to NFPA 921 where the proffered expert "considered and ultimately rejected alternative sources"); *Hoang*, 652 F.Supp.2d at 574.[18]

Our Court of Appeals's decision in *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138 (3d Cir.1983), fortifies our conclusion here. *Breidor*, in a pre-*Daubert* decision, held that "[w]here a fire investigator identifies the cause of fire in terms of probabilities (as opposed to mere possibilities) *by eliminating all but one reasonable potential cause*, such testimony is highly probative." *Id.* (emphasis added); *see State Farm Fire & Cas. Co. v. Holmes Prods.*, 165 Fed.Appx. 182, 186 (3d Cir. 2006) (citing *Breidor* for this proposition). As noted above, Kersey's methodology demonstrates that he did not reliably eliminate any other reasonable potential cause of the fire, thus gravely impairing his opinion's probative value. Since State Farm's record evidence of causation (in the form of Kersey's opinion evidence) "'is merely colorable or is not significantly probative'", *Affiliated FM Ins. Co.*, 311 F.3d at 232–33 (3d Cir.2002) (quoting *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505), it has failed to point to record evidence that would allow its claim to survive summary judgment.

16. We also remind State Farm's counsel of his duties under Fed.R.Civ.P. 11(b)(3) and Pa. R. Prof. Conduct 3.3(a)(3).

17. The record suggests that this hypothesis was adopted in two of the reports Kersey himself relied upon to formulate his opinion. *See* April 10, 2013 Tr. 89:15–18 ("Q. Mr. O'Brien's report, the state trooper's report, and Mr. Schneiders' report all say that you could not rule out an electrical cause to this fire; is that correct? A. That's what they say. Well, Randy didn't do a report. He only had the field notes that I could look at."); MSJ Ex. B at 1 of 6 (noting the Kersey reviewed

the state trooper's and O'Brien's reports but not Schneiders'). Kersey's report and testimony fail to explain why he disregarded this hypothesis out of hand given its presence in these other reports.

18. Indeed, NFPA 921 endorses (in more than one place) processes of elimination that a fire cause investigator is to use in arriving at a fire causation opinion. *Accord Community Ass'n Underwriters of Am., Inc.*, 2013 WL 818596, at *11; *Hoang*, 652 F.Supp.2d at 574.

Kersey's failure to base his opinion on facts and data and faithfully apply the NFPA 921 procedure and scientific method means in the end that there is "too great an analytical gap" between his method of interpreting the data and his ultimate conclusion as to the fire's cause. It therefore cannot be reliable. *See* Fed. R.Evid. 702(d); *Joiner*, 522 U.S. at 146, 118 S.Ct. 512. We will therefore not consider Kersey's expert fire causation opinion as part of the summary judgment record because it "cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2).

Since State Farm cannot point to any admissible causation evidence in the summary judgment record, it has failed to establish a *prima facie* negligence claim and it must succumb to summary judgment.

B. *The Vicarious Spoliation Theory Fails Because State Farm Cannot Point to Any Evidence that Nationwide Was the Steffens' Agent*

▮ In the face of this dearth of causation evidence, State Farm seeks refuge from summary judgment when it proffers an adverse inference on the causation issue based upon its "vicarious spoliation" [19] theory.

Notably, State Farm does not assert that the Steffens themselves are the direct spoliators of any evidence. Instead, State Farm blames Nationwide for it. *See, e.g.,* MSJ Resp. 4 ("Nationwide ... refused State Farm access to the property to inspect.... [D]efendants through Nationwide ... destroyed evidence"); *id.* at 10 ("The defendants will no doubt argue that Nationwide destroyed the evidence and refused access to State Farm. The defendants are still liable. Nationwide was operating on behalf of the defendants."); State Farm Supp. Br. 4 ("Nationwide, who had the exclusive control of the building and who was in control of the scene, gutted the property and preserved no evidence during the time State Farm was making repeated requests for access to conduct an inspection"); MSJ Resp. 10 (same).

State Farm seeks to attribute Nationwide's allegedly spoliating actions to the Steffens only on the basis of what Nationwide did or did not do. *See* MSJ Resp. 4 ("defendants through Nationwide Insurance Company refused State Farm access to the property to inspect .... [D]efendants through Nationwide Insurance Company destroyed evidence"); *id.* at 10 ("Nationwide was clearly acting as an agent for the defendant [*sic* ]"); *id.* ("Nationwide was operating on behalf of the defendants"); State Farm Supp. Br. 4 ("Nationwide was clearly acting as an agent for the defendant").[20]

In light of this theory, the Steffens respond that summary judgment is warranted (State Farm's vicarious spoliation theory notwithstanding) because "Nationwide

---

19. It appears that a spoliation inquiry is not limited solely to an analysis of a party's actions, but also to its agents and those acting at the party's behest. *See Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156–57 (4th Cir. 1995); *Bowman v. Am. Med. Sys., Inc.,* No. 96–7871, 1998 WL 721079, at *4 (E.D.Pa. Oct. 9, 1998); *see also* Jamie S. Gorelick, et al., *Destruction of Evidence* § 2.10 (current through 2012 cumulative supplement).

20. State Farm's response to the motion for summary judgment and supplemental brief asserts a vicarious spoliation theory against Nationwide and not a direct spoliation theory against the Steffens. The tenor of its summary judgment motion is only directed at Nationwide's conduct. MSJ Resp. 7–16; State Farm Supp. Br. 2 ("Defendant's [*sic* ] insurance carrier is attempting to benefit from its own malfeasance."). Consequently, we need not reach the merits of a direct spoliation theory against the Steffens.

cannot be said to have been acting for the Steffens ... in its investigation of the fire", and there is no record evidence of Nationwide's status as the Steffens' agent. *See* Reply at 3–4.

█ State Farm bears the burden of establishing that it is entitled to a summary judgment-defeating inference on the fire causation issue. *See United States v. Laurent*, 607 F.3d 895, 902 (1st Cir.2010) (holding that the party asserting spoliation bears the burden to establish such evidence in order to receive a spoliation instruction); *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 77 (3d Cir.2012) (placing burden on proponent of spoliation evidence).[21] To survive the Steffens' motion for summary judgment, State Farm must point to "sufficient probative evidence for a jury to find an act of spoliation [by the Steffens' agent] and to draw the inference derived from such an act", *see Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1322 (11th Cir.2011) (Korman, J., dissenting) (citing *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir.1997) (*per curiam* ), and *Kronisch v. United States*, 150 F.3d 112, 127–28 (2d Cir.1998)); *see also Nation–Wide Check Corp., Inc. v. Forest Hills Distributors, Inc.*, 692 F.2d 214, 218–19 (1st Cir.1982) (Breyer, then-Circuit Judge).

Given the nature of State Farm's vicarious spoliation theory and the Steffens' summary judgment argument here, in order to survive summary judgment State Farm must point to record evidence that could lead a reasonable factfinder to conclude that Nationwide was the Steffens' agent at the time it allegedly spoliated the fire scene. *See Lippay v. Christos*, 996 F.2d 1490, 1497 (3d Cir.1993) (placing burden of establishing agency on proponent of evidence).

In our March 14, 2013 Order, we directed the parties to file supplemental briefs that more fully addressed the legal and factual grounds that could support a finding that Nationwide was the Steffens' agent at a time when Nationwide was in complete control of the Steffens' home during its investigation of their first-party insurance claim.

In an effort to clarify its theory that Nationwide was the Steffens' agent, State Farm states that "on the issue of agency, Nationwide was operating under the contractual obligation they had to the insured. A fiduciary relationship was created." State Farm Supp. Br. 7; *see also id.* 5 ("Nationwide was fulfilling its contractual obligation to the defendants").

At the *Daubert* hearing, the parties stipulated to the admission of Ex. P–7 (the Steffens' insurance policy with Nationwide). State Farm also entered into evidence a signed "Permission Granted

---

**21.** In response to our March 14, 2013 Order, the parties do not disagree that: (1) our Court of Appeals's spoliation holding in *Bull*, 665 F.3d at 73, applies in this diversity case, *see* State Farm Supp. Br. 1; Steffens Supp. Br. at 12 of 45, and (2) we should apply the traditional master-servant relationship as it is understood by common law agency principles, *see* State Farm Supp. Br. 4; Steffens Supp. Br. at 7–11 of 45.

*Bull* holds that "[s]poliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." 665 F.3d at 73. We need not reach whether Nationwide's conduct satisfies each of these four *Bull* factors because we ultimately conclude that the Steffens are not liable for Nationwide's alleged actions under State Farm's vicarious spoliation theory.

We also expressed our inclination to apply *The Restatement (Third) Agency* here, and both parties' appear to agree since their supplemental briefings parrot the Third *Restatement* provisions to us.

Form" the contents of which gave Nationwide "AUTHORITY TO ENTER UPON [the Steffens'] PROPERTY AND INVESTIGATE [their] LOSS AND REMOVE ANY EVIDENCE THAT MAY POINT TO THE CAUSE OR ORIGIN OF THE LOSS AT PRESENT OR AT A LATER DATE." Hrg. Ex. P–8.

Whether State Farm survives summary judgment on the basis of its vicarious spoliation theory turns on whether it has pointed to any evidence that creates a genuine issue of fact as to whether the Steffens manifested their assent to Nationwide to act on their behalf and *subject to their control.* *See Restatement (Third) Agency* § 1.01 ("[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."). We conclude that State Farm has not pointed to any such evidence in this record.

"A person manifests assent or intention through written or spoken words or other conduct." *Id.* at § 1.03; *see also id.* Comment a ("A manifestation of the principal's assent to the agent is an element of the definition of a relationship of agency"). Nationwide and the Steffens certainly assented to be bound by certain contractual duties when they entered into an insurance contract and the Steffens signed the "Permission Granted Form." But State Farm does not point to any provision in the insurance policy—or for that matter to any other signed agreement—that evidences the Steffens' consenting to Nationwide taking actions *subject to their control.*

It is indisputable that the Steffens executed the "Permission Granted Form" in the context of Nationwide's first-party claim investigation of the fire. *See, e.g.,* State Farm Supp. Br. 7 ("When Nationwide investigated"); MSJ Resp. 7 ("Nationwide Insurance Company as the insurer of the Steffens conducted a cause and origin investigation"); *id.* at 8 ("As a result of Nationwide's cause and origin investigation"); State Farm Supp. Br. 4 ("The Nationwide adjuster told [Marc Steffen that] the property had to be inspected before it was gutted. Mr. Steffen did not even have a key to the property. The Nationwide adjuster had the key."); MSJ 3 ("Nationwide investigated the fire before it eventually agreed to pay the Steffens for any losses under their homeowners insurance policy.").

At the hearing, we also heard uncontroverted testimony that Nationwide could use the fruits of its investigation "to prove that [the fire] was not a covered loss" under the circumstances, Tr. 118:1–4. Such proof would of course relieve Nationwide of its duties to its insureds under the policy.

■ Under their Nationwide policy, the Steffens were obliged to "cooperate" with Nationwide in "giving evidence" to it, Hrg. Ex. P–7 at J1, so that Nationwide could exercise its right under the policy to *"investigate* and settle any claim or suit", Hrg. Ex. P–7 at G1 (emphasis added). If the Steffens failed to provide Nationwide with such cooperation that they owed under the policy, Nationwide might have been able to assert a "lack of cooperation" defense against the Steffens to avoid coverage it would otherwise owe them.[22] *See*

---

22. In order to show that the insured breached the duty to cooperate, the insurer must show that the breach is something more than a mere technical departure from the letter of the Policy. Instead, the insurer must show that the breach is a material variance that results in substantial prejudice and injury to the insurer's position in the matter.

*Forest City Grant Liberty Assocs. v. Genro II, Inc.*, 438 Pa.Super. 553, 652 A.2d 948, 951 (1995) ("[a]lthough a breach of a duty to cooperate will relieve the insurer from liability under the policy, a failure to cooperate must be substantial and will only serve as a defense where the insurer has suffered prejudice because of the breach").

State Farm's agency argument overlooks the well-established principle that first-party insurance claims are adversarial proceedings between an insurer and its insured notwithstanding an insurer and insured's congruent interests in third-party insurance claims. *See, e.g., Port Authority of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir.2002) (applying New York and New Jersey law) (reasoning that in the "first-party [insurance claim] context, the insured and carrier are placed in an adversarial position" because "[f]irst-party coverage ... protects against loss caused by injury to the insured's own property" and not loss "against liability for claims made against [insureds by third parties] as a result of [the insureds'] own conduct"); *accord Gottstein v. Nat'l Ass'n for Self Employed*, 53 F.Supp.2d 1212, 1221 n. 2 (D.Kan.1999) (holding that an "adversary relationship" existed between insurer and insured with respect to first-party claims); *Bailey v. Allstate Ins. Co.*, 844 P.2d 1336, 1339 (Colo.Ct.App.1992) ("[f]irst-party actions are adversarial in nature; therefore, it is impossible for the insurer to act as a fiduciary for its opposing contractee"); *see generally* Allan D. Windt, 1 *Insurance Claims & Disputes: Representation of Insurance Companies & Insureds* §§ 9:26 n. 84 & accompanying text (current through March 2012) ("The insurer is free to be adversarial within the confines of the normal rules of procedure and ethics"); *id.* 9:28A & text accompany-

ing nn. 4–5 ("no fiduciary duty exists with regard to first party claims: it is, in fact, an adversarial relationship").

Judges every day preside over insurer-initiated declaratory judgment actions in first-party claim cases where the insurer seeks to excuse itself from any duty to defend and indemnify the insured under the terms of the insurance contract. In our District and in the state courts insured-initiated actions against insurers alleging statutory bad faith claims are also daily civil filings. *See* 42 Pa. Cons.Stat. § 8371. The existence of such first-party claim litigation and the Pennsylvania statutory bad faith scheme shows beyond doubt that the interests of insurers and their insureds are anything but allied in the first-party claim context.

Thus, State Farm's effort to point to the insurance policy or "Permission Granted Form" as evidence that the Steffens assented to Nationwide acting on its behalf and subject to its control fundamentally misapprehends the nature of everyday first-party insurance claims. Nationwide acted on its own behalf to determine whether a covered loss existed for which it would owe the Steffens a duty to defend and/or indemnify. The Steffens had *no* control over Nationwide's actions after the fire because they were bound by a contractual duty to cooperate with Nationwide's investigatory requests or potentially lose coverage under the policy. By giving Nationwide permission to conduct its first-party claim investigation, the Steffens ceded control of the property to their insurer. Since there is insufficient probative evidence for a factfinder to find an act of spoliation by any agent of the Steffens here—*see Josendis*, 662 F.3d at 1322 (Korman, J., dissenting); *Nation–Wide Check Corp., Inc.*, 692 F.2d at 218–19; *Lippay*,

---

*See Conroy v. Commercial Casualty Ins. Co.*, 292 Pa. 219, 140 A. 905, 907 (1928); *Paxton*

*Nat'l Ins. Co. v. Brickajlik*, 513 Pa. 627, 522 A.2d 531, 532 (1987) (same).

996 F.2d at 1497—State Farm's vicarious spoliation theory fails to defeat summary judgment.

State Farm's supplemental briefing points to *Baliotis v. McNeil*, 870 F.Supp. 1285 (M.D.Pa.1994) (Vanaskie, then-Dist. Ct. J.), in support of its claim that an adverse spoliation inference is warranted against an insured for the actions of its insurer. Curiously, State Farm then makes no effort to explain why *Baliotis*'s reasoning should apply to the facts here. *Baliotis* simply does not apply to a vicarious spoliation theory.

Specifically, *Baliotis* was a case where the insured was a plaintiff in a claim against certain defendants for a fire that was allegedly caused by a faulty product. 870 F.Supp. at 1288. These defendants filed a joint motion for summary judgment based upon the insurer and the insured's allegedly improper demolition of a fire scene. *Id.* at 1288–89. Implicit in Judge Vanaskie's decision to attribute the insurer's actions to the insured—and therefore impose spoliation sanctions against the insurer *and* its insured—was an acknowl-

edgment that the insurer-subrogee was a real party in interest to the litigation, even though not named,[23] because "the subrogation claim filed by the [insureds] [wa]s really being prosecuted by the" insurer who was "seeking recovery of the [$84,100] it paid under the home owners policy." *Id.* at 1290 n. 10. Fed.R.Civ.P. 17(a) then provided that "[a]n action must be prosecuted in the name of the real party in interest." *See also United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380–81, 70 S.Ct. 207, 94 L.Ed. 171 (1949). Notwithstanding the insurer's absence as a named plaintiff, Judge Vanaskie and the defendants treated it as a real party-in-interest plaintiff precisely as the Federal Rules of Civil Procedure then required.[24] Consequently, *Baliotis* addresses a direct spoliation theory against a real party in interest plaintiff in whose name a lawsuit must be prosecuted under the Rules. Judge Vanaskie thus had no need to engage in the agency inquiry critical to our vicarious spoliation analysis here and *Baliotis* is silent on the issue we confront here even if its outcome is congenial with State Farm's purposes.[25]

---

**23.** *See* docket sheet in *Baliotis v. McNeil*, C.A. No. 92–1140 (M.D.Pa. filed August 20, 1992) (not naming the insurer as a party in the matter).

**24.** Indeed, Judge Vanaskie concluded that "it [was] appropriate to consider only the actions of [the insurer], and not those of the [insureds]" and the defendants' joint motion for summary judgment was "directed against . . . the [insureds] *and* their . . . [insurer]", *Baliotis*, 870 F.Supp. at 1289–90 & n. 10 (emphasis added). Moreover, it appears that the insurer in *Baliotis* represented its own interests in the proceedings. *Id.* at 1290–91 ("Liberty Mutual contends", "Liberty Mutual's assertion", "Liberty Mutual maintains that it did preserve the relevant evidence").

**25.** On page eight of State Farm's supplemental brief, it cites *Vodusek*, 71 F.3d at 156–57, *Bowman*, 1998 WL 721079, at *4, and *Community Association Underwriters of Am., Inc.*,

2013 WL 818596, at *10, in support of its attribution theory. These cases are also inapposite.

In *Vodusek*, the plaintiff's retained expert spoliated evidence. In contrast to this case, the grounds for an agency finding were thus straightforward given the typical master-servant relationship present there.

*Bowman*'s facts demonstrate why it differs from what is involved here. The *Bowman* plaintiff had legal counsel and, together, plaintiff and counsel instructed plaintiff's doctor to preserve certain evidence which the doctor did not do. *See also Bull*, 665 F.3d at 73 ("duty to preserve the evidence was reasonably foreseeable.") By contrast, there is no evidence here that the Steffens even had counsel when the fire scene was allegedly spoliated. Moreover, it appears undisputed that the concededly unsophisticated Steffens, State Farm Supp. Br. 6–7 ("Mr. and Mrs. Steffens [*sic* ] knew little, if anything, about

Nationwide is not a party to this litigation. It is also not a plaintiff in whose name the Federal Rules of Civil Procedure requires a case to be prosecuted. To the contrary, when Nationwide was the interpleader plaintiff in the related action State Farm filed *no* counterclaim against it. State Farm, as the party contending that a spoliation sanction should be imposed here, has never treated Nationwide as a party defendant or as a real party in interest in this controversy. This contrasts with the way the spoliation proponents in *Baliotis* regarded the insurer.

Under these circumstances, we will not *sua sponte* ascribe Nationwide the status of a "person"[26] who should have been joined as a defendant over State Farm's deliberate choice not to so name it. This is significant where State Farm's pleading has never identified or explained under Fed.R.Civ.P. 19(c) why Nationwide is such a "person" it had not joined. *See Simpson v. Alaska State Commission for*

fire investigations and liability claims"), were never told by State Farm or anyone else that they must preserve the fire scene or that *any* party was interested in inspecting the premises. Consequently, the Steffens did not entrust known essential evidence to another entity such that the other entity's spoliation could be attributed to them under *Bowman*'s reasoning. *See, e.g.,* MSJ Resp. Ex. F 45:6–46:1 (Mark Steffen deposition) ("Q. Did anyone from Nationwide tell you that the insurance companies for some of the adjacent homeowners wanted to get inspectors in to look at the house? A. No, they did not.... [Q.] So you never heard that anyone else wanted to get in and inspect the house, is that correct? A. That's correct. Q. If you had heard that somebody wanted to inspect the house, would you have granted them access? A. Well, at that time I didn't have the key.").

In *Community Association Underwriters of America, Inc.,* the retained origin and cause expert hired a contractor who spoliated evidence. 2013 WL 818596, at *2. Thus, that vicarious spoliation claim was premised on a series of master-servant relationships absent here.

*Human Rights,* 608 F.2d 1171, 1174 (9th Cir.1979) ("A plaintiff ordinarily is free to decide who shall be parties to his lawsuit.").[27]

## IV. *Conclusion*

We will therefore grant the Steffens' motion for summary judgment and enter judgment for them and against State Farm.

## *ORDER*

AND NOW, this 19th day of April, 2013, upon consideration of defendants Mark and Patricia Steffen's motion for summary judgment (docket entry # 22), plaintiff State Farm Fire & Casualty Company's response in opposition thereto (docket entry # 23), the Steffens' reply (docket entry # 25), our March 14, 2013 Order (docket entry # 33), the Steffens' supplemental memorandum (docket entry # 37), State Farm's supplemental memorandum, the

**26.** Fed.R.Civ.P. 19 governs the required joinder of parties. Though the rule speaks in terms of "persons" to be joined, " 'the term 'person' as used in the Federal Rules of Civil Procedure consistently means natural persons and business associations as well as governments' ". *Rosenruist–Gestao E Servicos LDA v. Virgin Enterprises Ltd.,* 511 F.3d 437, 445 (4th Cir.2007) (alterations and brackets in original omitted) (quoting *Yousuf v. Samantar,* 451 F.3d 248, 257 (D.C.Cir.2006)). Consequently, "persons" as used in Fed.R.Civ.P. 19(c) covers business associations like Nationwide.

**27.** It is also difficult for us to envision how our disposition of this summary judgment motion impedes, as a practical matter, Nationwide's ability to protect its interest here such that it must be considered a party required to be joined. *See* Fed.R.Civ.P. 19(a)(1)(B). We dispose of State Farm's claim against the Steffens in its entirety such that they (and their indemnifying insurer) incur *no* negligence-based loss liability.

April 10, 2013 hearing, and upon the analysis detailed in the accompanying Memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (docket entry # 22) is GRANTED; and

2. The Clerk of Court shall CLOSE this case statistically.